**Rebecca L. SHELL, Plaintiff,**

v.

**Donald C. WALL, Mary Deaton, Lisa York, and Iredell County Department of Social Services, Defendants.**

**No. ST–C–90–94–P.**

United States District Court, W.D. North Carolina, Statesville Division.

May 6, 1992.

Louis L. Lesesne, Jr., Charlotte, NC, for plaintiff.

James R. Morgan, Jr., Winston–Salem, NC, for defendants.

## ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court *sua sponte.*

On November 6, 1991, this Court recognized that it might not have jurisdiction to consider some or all of Plaintiff's claims. The Court, therefore, entered an Order that day requiring the parties to brief the issue of jurisdiction of the Court to hear this matter.

The Plaintiff, Rebecca L. Shell, originally brought this action in the Superior Court of Iredell County. On October 26, 1990, Defendants removed the case to this Court pursuant to Title 28, United States Code, Section 1441.

After the parties responded, the Court recognized that it still did not have enough information to determine whether it had jurisdiction. The Court, therefore, ordered the parties to respond again and provide it with additional information. The parties responded with a joint statement of facts and an affidavit filed on April 10, 1992.

Shell makes five claims for relief in her complaint: two federal constitutional claims pursuant to Title 42, United States Code, Section 1983; and, three claims based on state law. The three state-law claims are: (1) tortious interference with contract; (2) wrongful discharge; and, (3) infringement on the right of freedom of speech under Article I, Section 14 of the North Carolina Constitution.

Shell has sued four Defendants: Donald C. Wall ("Wall"), Lisa York ("York"), Mary Deaton ("Deaton") and the Iredell County Department of Social Services (the "De-partment"). Wall is the Director of the Iredell County Department of Social Services; York and Deaton are mid-level supervisors at the Department. Shell has sued each of these three individual defendants in both their individual and official capacities.

The jurisdictional issue in this case concerns whether the Eleventh amendment bars the Court from hearing certain claims in this matter. The states generally enjoy the protection of sovereign immunity under the Eleventh amendment which bars all suits against the states with a few narrow exceptions. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan*, 415 U.S. 651, 663–664, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

The Supreme Court has not extended the protection of the Eleventh amendment to local governments; in fact, the Court has expressly held that sovereign immunity does not extend to political subdivisions of the state such as counties and municipalities. *Mount Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Thus, the threshold issue of jurisdiction in this matter may be reduced to the question of whether the Iredell County Department of Social Services is an arm of the state. *See id.; Keller v. Prince George's County*, 923 F.2d 30, 32 (4th Cir.1991) (*Keller II*); *Keller v. Prince George's County*, 827 F.2d 952, 963–964 (4th Cir.1987) (*Keller I*). In *Keller II*, the Fourth Circuit Court of Appeals set forth several relevant considerations in analyzing whether a particular agency or department was a state or local entity for Eleventh amendment purposes:

> ... the characterization of the Department under state law; the extent of state control over the Department; the extent to which it depends on state appropriations; and whether a damage award would come from state funds.

*Keller*, 827 F.2d at 964 (citing *Mount Healthy, supra*).

These considerations flow from the discussion of the Eleventh amendment in the *Pennhurst* case. *Pennhurst State*

*School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In *Pennhurst,* the Supreme Court stated, "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with public administration,' or if the effect of the judgment would be 'to restrain the Government from acting or to compel it to act.'" *Id.* at 101, n. 11, 104 S.Ct. at 908, n. 11. The complaint, therefore, need not name the defendants as state agencies or state officials for the Eleventh Amendment to bar the suit. *Id.* at 101, 104 S.Ct. at 908. "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.' *Id.* Thus, 'the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" *Id.* (citations omitted).

■ The question presented is whether the Iredell County Department of Social Services may be considered an arm of the state for purposes of the Eleventh amendment. As noted above, the relevant considerations are:

1) the characterization of the Department under state law;

2) the relative extent of state control over the Department;

3) the relative extent to which the Department depends on state funding;

4) whether a damage award would be satisfied from state funds.

*Keller,* 827 F.2d at 964 (citing *Mount Healthy, supra*).

## CHARACTERIZATION OF THE DEPARTMENT UNDER STATE LAW

■ State law appears to characterize each local department of social service as a county entity. *See* N.C.Gen.Stat. § 108A–1. "Every county shall have a board of social service ..." *Id.* Although each county has a local department of social services, however, the state and the county share control over that entity.

## EXTENT OF STATE CONTROL OVER THE DEPARTMENT

The state and the county exercise equivalent control over the Department. *See* N.C.Gen.Stat. § 108A–3 (1990); *Fracaro v. Priddy,* 514 F.Supp. 191, 200–201 (M.D.N.C.1981); *contra Meares v. Brunswick County,* 615 F.Supp. 14, 16–17 (E.D.N.C.1985) (relying on N.C.Gen.Stat. § 153–77 for proposition that county has ultimate control over the department of social services). Under this statute, the state and the county each appoint one member (two each in the case of a five person board) of the three person "County Board of Social Services." N.C.Gen.Stat. § 108A–3. The statute directs the appointed members of the board to select one additional member. *Id.* Thus, the state and the county have equivalent authority over the governing body of the department of social services.

The state, however, provides the guidelines within which the department of social services must operate. The local boards of social services are directed to establish "county policies." *Id.* at § 108A–1. The law requires that the board establish the policies for the department in conformity with "with the rules and regulations of the Social Services Commission and under the supervision of the Department of Human Resources." *Id.* One of the duties of the board is to appoint the director of social services "according to the merit system rules of the State Personnel Commission." *Id.* at § 108A–9.

## EXTENT TO WHICH DEPARTMENT DEPENDS ON STATE FUNDING

The county and the state also share responsibility for funding the department. Article Five of Chapter 108A addresses the funding of the department. *See id.* at § 108A–86 *et seq.* "The Secretary [of Human Resources] shall have the power to promulgate rules and regulations establishing procedures for counties to follow in financing programs of assistance and social services." N.C.Gen.Stat. § 108A–86 (1990). The state and the county share the annual cost of each program "as determined by

the General Assembly." *Id.* at § 108A–87. Section 108A–88 sets up a procedure for the determination of the state's and counties' financial contributions to each department of social service. *Id.* at § 108A–88. Under this section, the Secretary of Human Resources determines the contribution of both the county and the state. *Id.* The Department of Human Resources is a state agency. N.C.Gen.Stat. § 143B–6 (1991). The Secretary of Human Resources, therefore, is a state official.

In the case of the Iredell County Department of Social Services, the state pays a significantly higher share of the nonfederal contributions to the budget than does the county. Affidavit of Donald C. Wall filed April 10, 1992 ("Wall Affidavit"). Under the 1991–1992 budget, the county's contribution is $3,856,066 or 10.5% of the total; the state's contribution is $8,545,920 or 23.4% of the total budget. The state contributes over twice as much to the total budget as the county does.

Other evidence of the state's control over the local departments of social service concerns the mandated process for selecting the individual directors of each department of social service. The board of social services is to choose the director "in accordance with the merit system rules of the *State* Personnel Commission." *Id.* at § 108A–12 (emphasis supplied). Furthermore, the director has the duty "to act as agent of the Social Services Commission and the Department of Human Resources in relation to work required by the Social Services Commission and Department of Human Resources in the county." *Id.* at § 108A–14.

In sum, the Court recognizes that the state and the county share the managerial and financial authority for the local departments of social service. Chapter 108A of the General Statutes of North Carolina governs the creation and administration of these departments of social service. *See* N.C.Gen.Stat. § 108A–1 *et seq.* (1990). The county and the state have equal control over the appointment of the county board of social services, the governing body of the department of social services in each county. N.C.Gen.Stat. § 108A–3 (1990).

And, the state and the county jointly are to fund, govern and administer the local boards of social service. *See, e.g., id.* at § 108A–1, 108A–88.

## PAYMENT OF A POTENTIAL AWARD OF DAMAGES

The record before the Court indicates that the Department's officials are covered by a professional liability insurance policy. Supplemental Affidavit of Donald C. Wall. Iredell County initially pays the premium. The state then reimburses the county for part of the premium with both federal and state funds. Ultimately, in recent years, the county has paid 40–44% of the premium, the state has paid 8%, and the federal funds paid by the state have constituted 48–52% of the premium.

Although the relative contributions to the insurance fund indicate that the county has taken on much more of the responsibility for the Department's liability, the policy contains an aggregate limit for the total liability of the policy during the term of coverage. Under this limit, a possibility exists that any money judgment in this case would not be covered by the policy.

If judgment for damages were satisfied out of the general budget for the Department, the federal government in effect would pay 64.8%; the state would in effect pay 23.4% of the total; and, the county in effect would pay 10.5% of the total. *Id.* The state would pay more than twice as much of the judgment as would the county. This factor also indicates that the agency is more an arm of the state than an arm of the county.

## CONCLUSION

After examining the characterization of the Department under state law, the relative extent of state control over the Department, the relative extent to which the Department depends on state funding, and the effect of a potential damage award on the state treasury, the Court finds that the Department is an arm of the state and that, therefore, the individual Defendants are state officials.

█ As discussed below, the Court does not have jurisdiction to hear certain claims

raised in this lawsuit. The Court will remand these claims instead of dismissing them because the Defendants removed this matter to federal court after Plaintiff originally had brought the action in state court.

Because the states and its agencies enjoy immunity from suit in federal court, all claims against the Department itself must be remanded to the state court from which this matter was removed. *Keller*, 923 F.2d at 32.

■ The Eleventh amendment also bars federal courts from awarding damages against state officials in their official capacities. *Edelman*, 415 U.S. at 678, 94 S.Ct. at 1363. The Court therefore must remand all claims that seek monetary damages against the individuals in their official capacities.

The Eleventh amendment further bars federal courts from hearing state-law claims even for injunctive relief when these claims are brought against state officials in their official capacities. *Pennhurst*, 465 U.S. at 121, 104 S.Ct. at 1363. The Court, therefore, must remand the state claims *in toto* as against the individuals in their official capacities. The Court must also remand the state-law claims that seek injunctive relief against the individuals in their individual capacities because the Court cannot provide this relief without, in effect, enjoining the Department.

The First and Third Claims for Relief against the Department and against the individuals in their official capacities and against the individuals in their individual capacities for injunctive relief are remanded to the Iredell County Superior Court.

The Second Claim for Relief is remanded *in toto* to the Iredell County Superior Court.

The Fourth and Fifth Claims for Relief against the Department and against the individuals in their official capacities for monetary damages are remanded to the Iredell County Superior Court.

IT IS SO ORDERED.