**John D. GRAY, Plaintiff,**

v.

**Tony LAWS, individually and officially as an Orange County Health Department employee; Dan Reimer, individually and officially as Orange County Health Director; Orange County Health Department; and Orange County, Defendants.**

**No. 93–60–CIV–5–D.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

Jan. 20, 1994.

M. Jackson Nichols, Allen & Pinnix, Raleigh, NC, for John D. Gray.

Robert H. Sasser, III, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, James Redfern Morgan, Jr., Winston–Salem, NC, Geoffrey E. Gledhill, Coleman, Gledhill & Hargrave, Hillsborough, NC, for Tony Laws, Dan Reimer, Orange County Health Department and Orange County.

## MEMORANDUM OF DECISION

DUPREE, District Judge.

Plaintiff, John D. Gray, filed this action against defendants Tony Laws and Dan Reimer, in their official and individual capacities, and against the Orange County Health Department ("OCHD") and Orange County. Plaintiff sets forth several causes of action in his complaint, all allegedly arising from his dismissal as a sanitarian with the OCHD. First, plaintiff claims, pursuant to 42 U.S.C. § 1983, that defendants violated his First Amendment right to freedom of speech and his Fourteenth Amendment right to due process. Second, plaintiff asserts several North

Carolina state law claims including civil conspiracy, a violation of his state constitutional rights, intentional infliction of emotional distress against defendants Reimer and Laws, and negligent retention by defendants Reimer and Orange County. The action is currently before the court on three motions by defendants: (1) a motion to dismiss based on Eleventh Amendment immunity; (2) a motion for summary judgment; and (3) a motion to amend defendants' answer.

The following is an overview of the undisputed facts. Plaintiff was a sanitarian for the OCHD for numerous years until his dismissal on May 7, 1990. Defendant Laws is the director of environmental health for the OCHD and was plaintiff's direct supervisor from 1977 until 1990. Defendant Reimer, who ultimately dismissed plaintiff, is the OCHD director.

In early 1990, defendants Laws and Reimer were informed of two instances in which plaintiff was alleged to have made improper sexual remarks to women while inspecting facilities in Orange County. On January 24, 1990 defendants Laws and Reimer met with Jeff Ensminger to discuss complaints that plaintiff made comments containing sexual innuendos to Mr. Ensminger's wife. Additionally, another individual present at the January 24 meeting, Spence Dickinson, indicated that Ms. Lynn Rollins also had expressed complaints that plaintiff had made improper remarks or advances to her while conducting an inspection.

After the January 24 meeting, defendant Laws at defendant Reimer's request conducted a preliminary investigation into these allegations. Shortly after the January 24 meeting, defendant Laws spoke with both Mrs. Hillary Ensminger and John Wilson, an employee of the Ensmingers, who allegedly witnessed the remarks made by plaintiff to Mrs. Ensminger. Defendants Laws and Reimer also interviewed Ms. Rollins on February 5, 1990.

After the February 5 interview with Ms. Rollins, defendant Reimer placed plaintiff on compulsory leave of absence with pay pending further investigation of the charges against him. After plaintiff's suspension, defendant Reimer involved the Orange County attorney, Geoff Gledhill, in further investigating these allegations. Mr. Gledhill interviewed Carol Layh, who allegedly witnessed plaintiff's inappropriate remarks to Ms. Rollins. Mr. Gledhill also re-interviewed Mrs. Ensminger and John Wilson. Mr. Gledhill provided defendant Reimer with a report concerning all these interviews.

At the conclusion of the formal investigation, defendant Reimer sent plaintiff a memorandum dated April 10, 1990, detailing the specific allegations being made against him and apprising him of his right to respond at a pre-dismissal conference. After receiving the memorandum but before the pre-dismissal hearing, plaintiff's attorney took the deposition of Mr. and Mrs. Ensminger and Lynn Rollins. Defendant Reimer had all the information gained in the investigation and the depositions taken by plaintiff's attorney at the pre-dismissal hearing. Additionally, plaintiff testified at the pre-dismissal hearing. After the hearing, defendant Reimer dismissed plaintiff by letter dated May 7, 1990. In the letter, defendant Reimer stated that the "validated" complaints of Ms. Rollins and the Ensmingers were the specific reasons for his dismissal.

Plaintiff subsequently appealed his dismissal by filing a petition with the North Carolina Office of Administrative Hearings ("OAH"). Plaintiff's petition asserted that his dismissal was without just cause and that it violated due process requirements. After the OAH conducted a hearing, temporary administrative law judge ("ALJ") Peter J. Sarda issued a proposed decision on September 12, 1991 concluding that plaintiff's due process rights had not been violated but that the reason for dismissing plaintiff did not constitute just cause. The State Personnel Commission adopted the ALJ's proposed decision on February 19, 1992 and recommended that plaintiff be reinstated with back pay and awarded attorney's fees. Defendant Reimer declined to follow the recommendation of the Personnel Commission in his final decision issued on March 13, 1992.

Plaintiff subsequently filed a petition for judicial review of defendant Reimer's final decision in the Wake County Superior Court.

Judge Robert L. Farmer issued an order on October 1, 1992 adopting the findings of fact and conclusions of law of the Personnel Commission, awarding reinstatement, back pay and attorney's fees to plaintiff. The case is currently pending in the North Carolina Court of Appeals. Despite the pendency of this state proceeding, plaintiff filed this action on January 15, 1993, seeking to recover additional damages that he claims could not have been compensated for in the OAH proceeding and the corresponding civil suit in state court.

### I. *MOTION TO DISMISS*

#### A. *Official Capacity Claims against Defendants Reimer and Laws*

■ Defendants Laws and Reimer move to dismiss based on Eleventh Amendment immunity pursuant to F.R.Civ.P. 12(b)(1). The individual defendants claim that they were acting merely as agents of the state and thus are immune from suit in federal court. Plaintiff contends that defendants acted autonomously with regard to personnel decisions and thus were not acting as agents of the state.

The undersigned, sitting by designation in the Western District of North Carolina, recently determined that local health department directors act as agents of the state in enforcing rules governing installation of residential septic systems. *See Houck & Sons, Inc. v. Transylvania County,* 852 F.Supp. 442 (W.D.N.C.1993), *affirmed,* No. 93–1462 (4th Cir.). Further, the North Carolina Court of Appeals held that local health departments are agents of the state when enforcing the rules governing sanitary sewage systems. *EEE–ZZZ Lay Drain Company v. North Carolina Department of Human Resources ("E Z Lay Drain"),* 108 N.C.App. 24, 29, 422 S.E.2d 338, 341 (1992).

In the present case, plaintiff sues not for defendants' actions in enforcing rules and regulations governing sewage and septic systems, but instead for their decision to dismiss plaintiff from his position as a sanitarian for the OCHD. Courts have utilized a "functional" analysis in determining whether an individual acts on behalf of the state or the county, noting that the same individual "is not always a state employee or always a county employee." *Dotson v. Chester,* 937 F.2d 920, 928 (4th Cir.1991) (sheriff acted on behalf of county in operating and managing county jail); *see also Owens v. Fulton County,* 877 F.2d 947, 950 (11th Cir.1989) (district attorney was agent of the state in exercising prosecutorial discretion). Thus, the court must determine whether defendants acted as agents of the state or county in dismissing plaintiff.

■ Determining whether an officer acts on behalf of the state or a county is a question of state law. *See Dotson,* 937 F.2d at 924; *Owens,* 877 F.2d at 950. Thus, North Carolina law governs this issue, and, specifically, N.C.G.S. § 130A–41(b)(12) (1992) provides that local health department directors have the authority "[t]o employ and dismiss employees of the local health department in accordance with Chapter 126 of the General Statutes." *Id.* Chapter 126 of the North Carolina General Statutes establishes a system of personnel administration for both state government employees and also local employees paid entirely or in part from federal funds. N.C.G.S. § 126–1 (1993). Thus, Section 130A–41(b)(12) requires local health department directors to follow state personnel procedures in dismissing department employees.

Plaintiff concedes that the local health department directors must comply with all state personnel procedures. However, he notes that pursuant to N.C.G.S. § 126–37(a) (1993), on an appeal of an employee's adverse employment decision, the State Personnel Commission's decision is merely advisory to the local appointing authority except in certain circumstances not applicable in this case. *Id.* Thus, plaintiff argues that because the State Personnel Commission's decision merely would be advisory to the local health director, the state has invested directors with autonomy with regard to personnel decisions by permitting them, as plaintiff states, to make the "final" decision on personnel matters. Thus, plaintiff contends that defendants acted as agents of the county, not the state, in dismissing him.

The court rejects plaintiff's argument. In dismissing employees, defendants are subject to the state's elaborate personnel procedures outlined in Chapter 126. Simply making the appellate decision of the State Personnel Commission advisory does not detract from the fact that defendants must act pursuant to state personnel policy in dismissing employees. Further, an employee dissatisfied with the decision of a local appointing authority can file an action in state superior court, as plaintiff has done in this case, which decision will be binding on that local authority. N.C.G.S. § 126–37(b). Thus, the superior court ultimately has authority to make the "final" decision with regard to local employees. Thus, plaintiff's argument is without merit.

The court also rejects plaintiff's additional arguments. First, to the extent that plaintiff argues that the OCHD and its employees are agents of the county and not the state under the North Carolina statutory scheme governing regulation of sanitation systems, the undersigned rejected identical arguments in the decision in *Houck & Sons* and similarly rejects them in this case. Second, plaintiff's argument that the county purchased an insurance policy and thus will be responsible for paying the judgment against defendants, assumes that defendants are county employees, since only county employees are covered and thus, begs the question. For the foregoing reasons, the court rules that in dismissing plaintiff defendants acted as agents of the state.

As agents of the state, defendants are entitled to Eleventh Amendment immunity, and, therefore, the court is without jurisdiction to adjudicate plaintiff's claims for monetary damages against defendants Laws and Reimer in their official capacities. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). Although plaintiff argues that claims for reinstatement are prospective and, therefore, are not barred by the Eleventh Amendment, plaintiff does not allege a claim for any type of prospective relief in his complaint. The com-

plaint seeks expenses, compensatory and punitive damages only. Thus, all plaintiff's claims against defendants Laws and Reimer in their official capacities are barred by the Eleventh Amendment.

■ Because the Eleventh Amendment bars plaintiff's claim against defendants Laws and Reimer in their official capacities in federal court, the court must determine how to dispose of these claims. On this issue, the court agrees with the plaintiff. Because defendants removed plaintiff's claims from state court to federal court, an injustice would result if the court subsequently permitted defendants to dismiss plaintiff's claims based on the court's lack of jurisdiction. Accordingly, plaintiff's claims against defendants Laws and Reimer in their official capacities are remanded to the Wake County Superior Court. *See Henry v. Metropolitan Sewer District*, 922 F.2d 332, 338 (6th Cir.1990) (reversing district court's dismissal of claim without prejudice and ordering remand to state court of claims removed to federal court but barred by the Eleventh Amendment); *Shell v. Wall*, 808 F.Supp. 481, 485 (W.D.N.C.1992) (ordering remand to state court of claims removed to federal court but barred by Eleventh Amendment).

The court notes that plaintiff's Section 1983 claim will likely be dismissed on remand because state officials sued in their official capacity are not considered "persons" within the meaning of Section 1983 claims. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). However, the court is without jurisdiction to address the merits of this claim. *Henry*, 922 F.2d at 337 n. 4 (refusing to reach defendant's alternative argument— that *Will* precludes official capacity claims— because Eleventh Amendment was jurisdictional bar). Unfortunately, the competing policies underlying the Eleventh Amendment and Section 1983 claims, in addition to defendants' decision to remove this case to federal court, compel the court's ruling requiring the case to be litigated in two separate forums.[1]

1. Although it was not addressed in plaintiff's motion to remand in this case and thus not decided at an earlier stage of the litigation, in the

future the court will raise the Eleventh Amendment issue sua sponte in motions to remove

Defendants also move to dismiss Orange County and the OCHD. However, at this stage of the litigation and pursuant to Rule 12(h)(2), the court may address these arguments as a motion for judgment on the pleadings.

### B. *Claims Against Orange County*

■ The court's ruling on defendants' motion to dismiss—that the individual defendants are entitled to Eleventh Amendment Immunity—also requires plaintiff's claims against Orange County to be dismissed. With respect to Orange County, defendants' argument, as the court understands it, is not that it is entitled to Eleventh Amendment immunity. Rather, defendants argue that because all the allegations and evidence relate to the actions of the individual defendants, determined by the court to be state actors, plaintiff has failed to state a claim against Orange County. A decision of the Tenth Circuit Court of Appeals and the undersigned's decision in *Houck & Sons* supports defendants' argument. *Arnold v. McClain*, 926 F.2d 963, 966 (10th Cir.1991); *Houck & Sons, Inc.*, 852 F.Supp. 442, 451–52 (W.D.N.C.1993).

Additionally, all plaintiff's arguments to the contrary once again assume the conclusion—that the individual defendants acted on behalf of the county. Therefore, plaintiff's arguments that Orange County is the real party in interest, that it is a necessary and indispensable party and that its purchase of insurance waives its immunity are all fundamentally flawed because they rely on the assumption that defendants Reimer and Laws were acting as county agents. Finally, although plaintiff asserts that defendants Reimer and the Chairman of the Orange County Board of Commissioners, Moses Carey, admitted in their depositions that the county insurance policy covered the present suit, the court interprets these statements

merely as an admission that the county had a policy, not that the policy covered suits against the OCHD and its employees.

Thus, the court rejects plaintiff's argument that Orange County is a proper party to this suit or, alternatively, that a genuine issue of material fact exists as to this question precluding summary judgment. Accordingly, defendants' motion for judgment on the pleadings as to Orange County is granted as to all plaintiff's claims.

### C. *Orange County Health Department as a Defendant*

■ Additionally, the court must dismiss plaintiff's claims against the OCHD because it is not a legal entity capable of suing or subject to being sued. A federal court looks to the law of the state in which the district court sits to determine the capacity of a state governmental body to be sued in federal court. F.R.Civ.P. 17(b); *Avery v. County of Burke*, 660 F.2d 111, 114 (4th Cir.1981). Under established North Carolina law, a component part of the North Carolina government cannot be sued absent statutory authority. *Coleman v. Cooper*, 89 N.C.App. 188, 192, 366 S.E.2d 2, 5 (1988) (affirming dismissal of Raleigh Police Department as a defendant because no statute authorized suit against it) (citing *McPherson v. First & Citizens National Bank*, 240 N.C. 1, 81 S.E.2d 386 (1954)). No North Carolina statute authorizes suit against the local health departments. In fact, in a pre-trial ruling in *Houck & Sons* the undersigned dismissed the Transylvania County Health Department for identical reasons. Thus, all plaintiff's claims against defendant OCHD are dismissed.[2]

### II. *MOTION FOR SUMMARY JUDGMENT*

Defendants also move for summary judgment on most of plaintiff's remaining claims. On a motion for summary judgment, a court

---

Section 1983 claims, if not addressed by the parties.

**2.** The court's ruling may appear inconsistent with the North Carolina Court of Appeals decision in *E Z Lay Drain,* holding that local health departments are agents of the state. However, the decision in *E Z Lay Drain* gives no indication

that the parties raised the health department's capacity to be sued either at trial or on appeal. Thus, the more likely explanation is that the issue of capacity was not presented to and, therefore, not decided by the court in *E Z Lay Drain. See E Z Lay Drain,* 108 N.C.App. at 31, 422 S.E.2d at 343.

must grant the motion if the parties' pleadings, depositions, interrogatory answers, admissions and any affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the initial burden of demonstrating the absence of any material issue of fact, but need not support its motion with affidavits or other materials negating the non-moving party's claim. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53.

Once the moving party meets its initial burden, the non-moving party may not rely upon mere allegations or denials contained in its pleadings, but must come forward with some form of evidentiary material allowed by Rule 56 demonstrating the existence of a genuine issue of material fact requiring a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. In other words, to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In considering the motion, the court must view the facts and inferences to be drawn from the evidence in the light most favorable to the non-moving party to the extent those inferences are reasonable. *Matsushita Electrical Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

### A. *Section 1983 Claims—Individual Capacity Suits*

The court's ruling that defendants Laws and Reimer were entitled to Eleventh Amendment immunity does not affect plaintiff's claims against these defendants in their individual capacities. Thus, the court must address plaintiff's claims against these defendants in their individual capacities pursuant to defendants' summary judgment motion. The court first addresses plaintiff's two claims under Section 1983.

### 1. *First Amendment Claim*

Plaintiff first asserts that defendants' dismissal of him violated his First Amendment right to freedom of expression. To establish a cause of action for an alleged wrongful discharge in violation of the First Amendment, a public employee must satisfy two requirements: (1) the speech for which the employee was allegedly dismissed must qualify as "protected speech;" and (2) the protected speech must be the "but for" cause of his discharge. *Jurgensen v. Fairfax County, Virginia*, 745 F.2d 868, 878 (4th Cir.1984) (citing *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)).

#### a. *Protected Speech*

In analyzing the first requirement, courts employ a two-step analysis to determine whether an employee's speech is protected. *Connick v. Myers*, 461 U.S. 138, 150, 103 S.Ct. 1684, 1691–92, 75 L.Ed.2d 708 (1983). First, as a "threshold inquiry" the court must determine whether a public employee's speech deals with a " 'matter of public concern.' " *Connick*, 461 U.S. at 150, 103 S.Ct. at 1691. Second, if, and only if, the employee's speech is deemed to be a matter of public concern, the court must determine if the public employer's "interest in the effective and efficient fulfillment of its responsibilities to the public" outweighs the employee's interest in speech. *Id.; see also Joyner v. Lancaster*, 815 F.2d 20, 23 (4th Cir.), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 62 (1987). Determining whether the speech is "protected" is a question of law. *Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7; *Huang v. Board of Governors of University of North Carolina*, 902 F.2d 1134, 1140 & n. 7 (4th Cir.1990).

Plaintiff alleges in his complaint that he "raised concerns with his superiors about the mismanagement and arbitrary and capricious enforcement of sanitation laws ... by Defendant Laws on behalf of the Department." Complaint at Para. 9. These allegations of mismanagement and arbitrary enforcement, if proven, would likely constitute matters of public concern. However, plain-

tiff offers no support for these allegations in his voluminous submissions in opposition to defendants' summary judgment motion.

Rather, plaintiff's only evidence of expressions of complaints to superiors relates to two instances in which he appealed an evaluation and a denial of a pay increase. Review of the documentation submitted by plaintiff reveals no indication of complaints of mismanagement or arbitrary enforcement of the sanitation laws. It is well settled law "that a public employee's expression of grievances concerning his own employment is not a matter of public concern." *Huang*, 902 F.2d at 1140 (citing *Connick*, 461 U.S. at 148, 154, 103 S.Ct. at 1693–94). Thus, because plaintiff's substantiated allegations of complaints regarding defendant Laws' conduct are merely expressions of employment grievances, they do not relate to matters of public concern, and because plaintiff fails to establish, as a matter of law, the first requirement of his claim for a First Amendment violation, the court must enter summary judgment in favor of defendants on this claim. *See Connick*, 461 U.S. at 146–47, 103 S.Ct. at 1689–90.

### b. *Causation*

 Moreover, plaintiff's proffer of evidence also fails to raise a triable issue of fact on the second requirement of his First Amendment claim. Although the second requirement is a factual issue, summary judgment is appropriate if "[a] jury could not reasonably ... [find] the requisite 'but for' causation." *Huang*, 902 F.2d at 1141.

The Fourth Circuit's decision in *Huang* is instructive. In that case plaintiff, a faculty member at North Carolina State University, presented substantial evidence of contentious relationships between himself and his fellow faculty members, his department chairman and the Chancellor of the university. The evidence also showed a "physical confrontation with another ... faculty member." *Id.* at 1137. Plaintiff alleged that defendants violated his First Amendment right by transferring him to another department because six years earlier he " 'blew the whistle' " about an allegedly improper business arrangement involving another faculty member

in the department. *Id.* at 1140. After reviewing the Chancellor's stated independent reasons for transferring plaintiff, the court held "[t]here is not a scintilla of evidence that the Chancellor's decision was infected with a retaliatory motive traceable to the alleged 1980 whistle-blowing incident." *Id.* at 1141. Thus, the Fourth Circuit affirmed the trial court's grant of defendants' summary judgment on motion plaintiff's First Amendment claim. *Id.*

Similarly, in this case the record is devoid of any evidence upon which a jury could find that but for any complaints by plaintiff to his superiors, he would not have been dismissed. The uncontroverted evidence in the record indicates that plaintiff was dismissed based on allegations of improper sexual remarks made to Ms. Rollins and Mrs. Ensminger. Plaintiff proffers no evidence permitting a reasonable inference that any alleged complaints to his superiors on matters of public concern, assuming any could be proved, resulted in his dismissal. Thus, the court must enter summary judgment for defendants on plaintiff's First Amendment claim for the additional reason that he failed to raise a triable issue of fact on the second "but for" causation requirement.

### 2. *Due Process Claim*

Plaintiff alleges that defendants violated his rights under the Fourteenth Amendment due process clause in suspending and dismissing him. Defendants contend that plaintiff's due process claims fail on several grounds.

#### a. *Res Judicata—Collateral Estoppel Defenses*

##### (1) *Motion to Amend*

 First, pursuant to F.R.Civ.P. 15(a) defendants move to amend their answer to add res judicata and collateral estoppel as affirmative defenses to plaintiff's due process claim. At this stage of the litigation, defendants may amend their answer only by leave of the court. As Rule 15(a) indicates, the court should grant such leave freely "when justice so requires." F.R.Civ.P. 15(a). Further, the decision of whether to give leave to

amend a party's pleadings lies within the discretion of the district court. *Sandcrest Outpatient Services, P.A. v. Cumberland County Hospital System, Inc.*, 853 F.2d 1139, 1148 (4th Cir.1988).

██ In exercising this discretion, however, the Supreme Court has emphasized that a district court should deny a party's leave to amend a pleading only when: (1) the amendment would be unduly prejudicial to the opposing party; (2) there has been bad faith on the part of the moving party; or (3) the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Additionally, the Fourth Circuit has held that delay alone is not a sufficient reason to deny a party leave to amend its pleading. *National Bank of Washington v. Pearson*, 863 F.2d 322, 327–28 (4th Cir.1988). Thus, unless this court finds that the proposed amendment is unduly prejudicial to plaintiff, lacking a good faith basis, or futile, the defendants' proposed motion to amend its answer must be granted.

██ Plaintiff asserts several reasons why the court should deny defendants' motion to amend. First, plaintiff argues that defendants have waived the affirmative defenses of res judicata and collateral estoppel by failing to assert them in their answer. This argument is based on cases in which defendants have attempted to assert those defenses for the first time on appeal and not on motions to amend their answer in the district court. Therefore, those cases are inapposite.

Plaintiff next argues that defendants' delay in filing their motion until after the discovery deadline had passed is unduly prejudicial. However, the affirmative defenses sought to be added would not require plaintiff to conduct additional discovery. All documents necessary to support such a defense could be taken from the plaintiff's own records. Thus, the court finds that plaintiff would not be prejudiced by allowing defendants to add these affirmative defenses in their answer. *See Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421–22 (4th Cir.1990) (reversing district court's denial of motion to amend answer to add defense of fraud because no prejudice would result to plaintiff since all documents necessary to address such a de-

fense could be taken from plaintiff's own records). Further, plaintiff has not asserted any bad faith on the part of defendants in moving to amend their answer.

Thus, the court will allow defendants' motion to amend their answer unless either or both of those defenses are deemed to be futile. A recent Fourth Circuit decision compels the conclusion that defendants' affirmative defense of res judicata, or claim preclusion, is futile. *Davenport v. North Carolina Department of Transportation*, 3 F.3d 89, 92 (4th Cir.1993). In *Davenport*, this court granted a defendant's motion for summary judgment on plaintiff's due process claim based on the defendant's defense of res judicata, in a similar factual situation. *Id.* at 90. The Fourth Circuit first noted that in determining whether to give a state court judgment preclusive effect in a Section 1983 action, the court must apply the law of the rendering state. *Id.* at 92. However, under North Carolina's cautious approach to the defense of res judicata, the Fourth Circuit reversed. The court held that the plaintiff could bring a subsequent due process claim under Section 1983 even though he had asserted different due process violations in the state court administrative proceeding. *Id.* at 96–97. Because the court interprets the Fourth Circuit's ruling in *Davenport* as preventing defendants from pleading the defense of res judicata in this case, the court denies defendants' motion to amend its answer to add the defense of res judicata as futile.

However, the Fourth Circuit in *Davenport* expressly left open the possibility of whether collateral estoppel, or issue preclusion, could bar a plaintiff's similar claims in a subsequent action. *Id.* at 97 n. 9. For the reasons stated below, the court finds that collateral estoppel bars three of plaintiff's due process claims. Accordingly, the court grants defendants' motion to amend its answer to add that defense.

*(2) Merits of Collateral Estoppel Defense*

██ Under North Carolina law, a defendant must satisfy five requirements to establish the defense of collateral estoppel and thereby preclude a plaintiff from re-

litigating an issue raised in a prior action. He must show (1) that the issues are the same; (2) that the issues were raised and actually litigated; (3) that the issues were actually determined; (4) the issues actually determined were necessary to the resulting judgment; and (5) that a final judgment on the merits was reached. *Thomas M. McInnis & Associates, Inc. v. Hall,* 318 N.C. 421, 429–30, 349 S.E.2d 552, 560 (1986). North Carolina law no longer requires a party to show that both parties or their privies were parties to the prior action if the party against whom estoppel is sought to be enforced had a full and fair opportunity to litigate the issue in the prior action. *Id.*

First, comparison of the issues in the prior administrative proceeding with the issues raised in plaintiff's complaint in the present action demonstrates that three of the issues are identical. The complaint alleges that the defendants denied plaintiff due process in that there was

(1) lack of sufficient specificity in the suspension notice;

(2) failure to comply with procedural requirements during the investigatory suspension;

(3) failure of the Health Director to afford Petitioner an unbiased pre-dismissal conference before he decided to dismiss Petitioner; and

(4) that the decisionmaker who participated in the case was the same person who made the final agency decision. (Complaint at Para. 23.)

In his memorandum of law to the ALJ in the prior administrative proceeding, plaintiff posed the issues of whether the OCHD violated his due process rights by: (a) the lack of specificity in the letter of suspension; (b) the health director's decision to dismiss petitioner before the pre-dismissal conference; (c) failing to follow the proper procedures in conducting the investigatory suspension of plaintiff. (Defendants' Exhibit F.)

Two issues raised in the prior proceeding are patently identical to those alleged in plaintiff's complaint in this case. Both the lack of specificity in the letter of suspension and the failure of the OCHD to follow proper procedures in conducting its investigatory suspension of plaintiff clearly were raised in the prior proceeding. Further, the third issue in the complaint and the remaining issue in the prior action are formulated differently but in essence both allege a failure to provide plaintiff with an unbiased decisionmaker in the initial decision to dismiss him. Thus, the issues related to due process presented in the prior action are identical to three of those alleged in plaintiff's complaint in this action. However, as defendants concede in their brief, plaintiff's fourth issue in the present complaint could not have been addressed in the administrative hearing since the actions alleged occurred subsequent to the hearing.

Second, as the plaintiff's memorandum of law demonstrates, the issues were raised and actually litigated in the prior administrative proceeding.

Third, the issues were actually determined. The ALJ in his proposed decision, subsequently adopted by the Personnel Commission, made the following conclusions of law:

(2) Placing Petitioner on a compulsory leave of absence with pay pending an investigation into allegation of Petitioner's personal misconduct is not a disciplinary action under N.C.Gen.Stat. § 126–35 and therefore does not trigger the written notice requirement.

(3) The circumstances surrounding the placing of Petitioner on compulsory leave of absence with pay satisfies the personal conduct exception to the written notice requirement and the subsequent predismissal notice and predismissal hearing provided Petitioner satisfies the written notice requirements of N.C.Gen.Stat. § 126–35 and the applicable State Personnel Regulations.

(4) There was no violation of Petitioner's rights to due process throughout the investigatory proceeding.

(Defendants' Exhibit B). Thus, the ALJ actually determined the issues raised and litigated by plaintiff in the prior action.

Fourth, the issues were necessary to the resulting judgment. Plaintiff alleged that his due process rights were violated in three specific ways during his suspension and ulti-

mate dismissal. For the ALJ to conclude that plaintiff's due process rights were not violated, he must have evaluated and rejected each of plaintiff's arguments.

■ Fifth, the judgment was a final decision on the merits which plaintiff had a full and fair opportunity to litigate. The general rule in North Carolina is that an agency decision that is judicial or "quasi-judicial" in nature is a final judgment on the merits for the purpose of collateral estoppel. *See Maines v. City of Greensboro,* 300 N.C. 126, 133, 265 S.E.2d 155, 160 (1980); *In Re Mitchell,* 88 N.C.App. 602, 605, 364 S.E.2d 177, 179 (1988). In the prior proceeding, the OAH resolved disputed issues of fact and law and plaintiff had a full and fair opportunity to litigate his due process claim and seek court review of adverse findings or conclusions. Thus, the OAH acted in a judicial capacity in hearing plaintiff's claim in the prior action. *See United States v. Utah Construction & Mining Company,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Plaintiff's apparent failure to perfect his appeal of the due process issue to the North Carolina Court of Appeals does not affect the finality of the judgment. *See Johnson v. Smith,* 97 N.C.App. 450, 454, 388 S.E.2d 582, 584 (1990).

Defendants have therefore satisfied all of the requirements for application of collateral estoppel in this case. Accordingly, plaintiff is estopped from asserting three of the four issues raised in his due process claim in this action. Because the fourth issue relating to the alleged denial of due process is not precluded by collateral estoppel the court will address the merits of that claim.

b. *Merits of Remaining Due Process Claim*

■ In plaintiff's remaining due process claim he asserts that defendants violated his rights because defendant Reimer was not an unbiased decisionmaker in his "final" decision to dismiss plaintiff. (Plaintiff's Complaint at Para. 23.) It is well established that a state employee dismissed from government employment generally does have a right to an impartial decisionmaker under the due process clause. *Hortonville Joint School Dis-*

*trict No. 1 v. Hortonville Education Association,* 426 U.S. 482, 489, 96 S.Ct. 2308, 2312–13, 49 L.Ed.2d 1 (1976). However, under established Fourth Circuit and Supreme Court precedent:

The due process requirement of an impartial tribunal is not violated simply because the ultimate decisionmaker was involved in an earlier stage of investigative or administrative proceedings.... Rather, there is a presumption that governmental officials can and will decide particular controversies conscientiously and fairly despite earlier involvement in their investigation. This presumption can only be overcome by demonstrations of "extrajudicial" bias stemming from other influences than the investigative involvement.

*Boston v. Webb,* 783 F.2d 1163, 1166 (4th Cir.1986) (affirming summary judgment on plaintiff's due process claim because plaintiff failed to produce any evidence of defendant's bias other than that resulting from participation in the investigation) (citing *Withrow v. Larkin,* 421 U.S. 35, 55, 95 S.Ct. 1456, 1468–69, 43 L.Ed.2d 712 (1975)); *see also Bowens v. North Carolina Department of Human Resources,* 710 F.2d 1015, 1020 (4th Cir.1983) (same) (citing *United States v. Grinnell Corporation,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)).

In order to survive summary judgment and overcome the presumption of impartiality on this claim, plaintiff must produce evidence of defendant Reimer's bias from an extrajudicial source. Plaintiff's arguments and supporting evidence demonstrating that defendant Reimer was involved in the investigatory process is insufficient to withstand summary judgment on this issue. Further, the simple fact that defendant Reimer failed to follow the Personnel Commission's decision also is insufficient evidence of bias. If defendant Reimer's failure to follow a decision of the Personnel Commission alone was sufficient evidence of bias, it would be pointless to make the Personnel Commission's decision merely advisory in the statute. See N.C.G.S. § 126–37(b). Finally, the only testimony plaintiff proffers relating to defendant Reimer's second or "final" decision actually supports defendants' position that he

attempted to maintain an objective viewpoint in reconsidering the decision. (See Plaintiff's Exhibit F, 6/23/93 Deposition of Dan Reimer pp. 55–56.)

Plaintiff presented some of his and defendant Laws' sworn testimony that arguably created a genuine issue of fact that defendant Reimer may have made his decision prior to the pre-termination hearing. However, this testimony related only to the impartiality of defendant Reimer in the initial decision to dismiss plaintiff and not to any pre-disposition on his part in reconsidering plaintiff's dismissal. The court has held that the ALJ considered and rejected plaintiff's due process arguments relating to defendant Reimer's impartiality in the initial decision, and, therefore, plaintiff is collaterally estopped from asserting that claim in this action. Accordingly, the evidence relating to defendant Reimer's alleged impartiality in his initial decision cannot create a genuine issue of fact on plaintiff's remaining claim of impartiality in defendant Reimer's "final" decision. For the foregoing reasons, the court grants summary judgment for defendant on plaintiff's remaining due process claim.

Because the court has now disposed of all of plaintiff's Section 1983 claims against all defendants, it is unnecessary to address the parties' remaining arguments on these claims.

The court next addresses plaintiff's remaining state law claims against defendants Laws and Reimer in their individual capacities.

### B. *State Constitutional Claims*

 In plaintiff's third cause of action, he asserts that the same acts comprising the alleged federal constitutional violations also violate similar provisions of the North Carolina Constitution. (Complaint Paras. 26–27.) However, plaintiff concedes that the same principles governing the right to due process and freedom of speech under the federal constitution apply to the corresponding North Carolina constitutional provisions. *See, e.g., State v. Felmet,* 302 N.C. 173, 178, 273 S.E.2d 708, 712 (1981) (freedom of speech); *Nantz v. Employment Security Commission,* 290 N.C. 473, 484, 226 S.E.2d

340, 347 (1976) (due process). Thus, the court's grant of summary judgment on plaintiff's federal constitutional claims also compels granting summary judgment on plaintiff's state constitutional claims. Moreover, the North Carolina Supreme Court recently held that no direct cause of action exists against individuals for alleged violations of the North Carolina Constitution. *Corum v. University of North Carolina,* 330 N.C. 761, 789, 413 S.E.2d 276, 293, *cert. denied,* 506 U.S. 985, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992). Based on both of the independent grounds stated above, the court grants summary judgment for defendants Laws and Reimer in their individual capacities on plaintiff's claims under the North Carolina Constitution.

### C. *Intentional Infliction of Emotional Distress*

 Plaintiff's fourth cause of action is for intentional infliction of emotional distress against defendants Reimer and Laws in their individual capacities. To establish such a claim plaintiff must satisfy three requirements: (1) extreme and outrageous conduct, (2) which is intended and does cause (3) severe emotional distress to another. *Waddle v. Sparks,* 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citing *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)).

In considering the first requirement, the North Carolina courts have characterized extreme and outrageous conduct as that which "exceeds all bounds usually tolerated by decent society." *Stanback v. Stanback,* 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979). Moreover, North Carolina courts have interpreted the extreme and outrageous requirement very stringently in employment actions by ruling for defendants as a matter of law despite evidence of arguably outlandish conduct. *See, e.g., Daniel v. Carolina Sunrock Corporation,* 110 N.C.App. 376, 381–84, 430 S.E.2d 306, 310–11 (affirming summary judgment for defendant because evidence that defendant inspected plaintiff's desk, moved her to an office with no phone or heat and made harassing phone calls to her mother and sister-in-law was insufficient), *rev'd on*

*other grounds,* 335 N.C. 233, 436 S.E.2d 835 (1993).

In this case, even in its most favorable light, plaintiff's forecast of evidence is wholly insufficient to create a genuine issue of fact that defendant's conduct was extreme or outrageous under established North Carolina authority. Evidence arguably demonstrating defendants' personal bias and their failure to follow proper state dismissal procedures simply do not constitute the type of extreme and outrageous conduct that "exceeds all bounds usually tolerated by decent society." *See McKnight v. Simpson's Beauty Supply, Inc.,* 86 N.C.App. 451, 454, 358 S.E.2d 107, 109–10 (1987) (affirming directed verdict on plaintiff's emotional distress claim because evidence that plaintiff was discharged abruptly, without cause and without explanation was insufficient to establish extreme and outrageous conduct). Thus, the court grants defendants' summary judgment motion on this claim against defendants Laws and Reimer in their individual capacities.

### D. *Negligent Retention*

■■■■ Plaintiff's fifth cause of action is against defendant Reimer for negligently retaining defendant Laws. Defendant Reimer asserts the defense of public officer immunity to this claim. As defendant asserts, public officers sued in their individual capacities are immune from liability for discretionary acts done in good faith and without malicious intent. *See Hare v. Butler,* 99 N.C.App. 693, 700, 394 S.E.2d 231, 236 (1990). Thus, in determining whether defendant Reimer is entitled to public officer immunity, the court must make three related determinations: (1) whether defendant Reimer is a public officer; (2) whether defendant Reimer's conduct was discretionary; and (3) whether plaintiff has proffered evidence that defendant Reimer acted in bad faith or with malicious intent. *See id.*

First, the North Carolina Court of Appeals has held that local health directors are public officers. *E Z Lay Drain,* 108 N.C.App. at 29, 422 S.E.2d at 342 (1992). Thus, defendant Reimer is a public officer. Second, the Court of Appeals has also held that actions similar to those alleged in this case, involving the failure to properly supervise and control employees, are discretionary. *See Hare,* 99 N.C.App. at 700–01, 394 S.E.2d at 237. Thus, defendant Reimer's actions were discretionary. Third and finally, plaintiff has not proffered any evidence of bad faith or malicious intent by defendant Reimer in supervising and retaining defendant Laws.

Defendant Reimer is therefore entitled to public officer immunity on plaintiff's negligent retention claim, and, accordingly, the court will grant summary judgment for defendant Reimer in his individual capacity on that claim.

### *CONCLUSION*

Defendants Reimer and Laws are state officials and, thus, entitled to Eleventh Amendment immunity. Accordingly, all claims against defendants Reimer and Laws in their official capacities will be remanded to the Wake County Superior Court, from which they were removed, because the court lacks jurisdiction over such claims. Because defendants Reimer and Laws act on behalf of the state, not the county, and all plaintiff's allegations concern actions of these two defendants, all claims against Orange County will be dismissed. Further, all claims against the Orange County Health Department will be dismissed because it is not an entity subject to suit in North Carolina.

The court will retain jurisdiction over plaintiff's claims against defendants Reimer and Laws in their individual capacities. However, several of these claims must also be dismissed. The court will dismiss plaintiff's claims for violations of his rights to freedom of speech and due process under the United States Constitution, his claims under comparable provisions of the North Carolina Constitution, his claims for intentional infliction of emotional distress and his claim against defendant Reimer for negligent retention. Defendants' motion to amend their answer to plead res judicata will be denied as futile but will be granted to allow defendants to plead the defense of collateral estoppel. Finally, defendants did not move for summary judgment on plaintiff's civil conspiracy

claim and that claim must therefore proceed to trial.