**Charlotte BUSER, Plaintiff,**

v.

**SOUTHERN FOOD SERVICE, INC.,
and James Nussbaum,
Defendants.**

**No. 1:98–CV00657.**

United States District Court,
M.D. North Carolina.

Aug. 11, 1999.

Paul E. Martin, Greensboro, NC, for Plaintiff.

Melissa Robin Davis, Greensboro, NC, for Defendants.

*MEMORANDUM OPINION*

BEATY, District Judge.

## I. INTRODUCTION

This matter is before the Court on Defendants Southern Food Services, Inc.'s ("Southern" or "the Company"), and James Nussbaum's ("Nussbaum") Motion to Strike and Dismiss [Document # 6]. Plaintiff Charlotte Buser ("Buser") has filed a Brief in Opposition to Defendants' Motion to Strike and Dismiss [Document # 10]. For the reasons stated herein, Southern's and Nussbaum's Motion to Strike and Dismiss is granted in part and denied in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND [1]

Southern is a corporation licensed by and doing business in North Carolina. (Compl.¶ 4.) At all relevant times, Nussbaum served as Vice President of Southern. (*Id.* at ¶ 5.) Buser was employed by Southern from July 1985 through September 1996. (*Id.* at ¶ 3.) This action arose out of the circumstances surrounding her discharge from the Company.

In May 1994 Buser was diagnosed as having fibromyalgia, a muscle disorder. (*Id.* at ¶ 6.) At the time of this diagnosis, she worked under the direct supervision of Nussbaum. (*Id.* at ¶ 23.) Buser's condition worsened over time. (*Id.* at ¶ 6.) On September 24, 1996, based upon her doctor's recommendation, Buser requested medical leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (*Id.*) Her request was granted by her then immediate supervisor, Randy Newton ("Newton"). (*Id.* at ¶ 7.) Sometime prior to that date, Newton had been made aware of her illness. (*Id.*)

On September 25, 1996, Nussbaum telephoned Buser and indicated to her that Southern wanted her to continue working. (*Id.* at ¶ 8.) He also suggested rearranging her schedule to accommodate her health problems. (*Id.*) In response, Buser informed Nussbaum that, based upon her doctor's recommendation, she would not be able to return to the Company as requested and would, instead, have to temporarily cease employment. (*Id.*) On September 27, 1996, Nussbaum again telephoned Buser and demanded that she return to work. (*Id.* at ¶¶ 9-10.) After she explained to him that her medical condition prevented her from doing so, Nussbaum discharged Buser from Southern. (*Id.* at ¶ 11.)

After Nussbaum terminated Buser's employment with the Company, the United States Department of Labor ("USDOL")—presumably pursuant to a complaint filed by Buser—investigated whether Southern, in dismissing Buser, violated provisions of the FMLA. (*Id.* at ¶ 21.) Buser also alleges that on April 10, 1997, the USDOL informed Southern—through its legal representative—of its view that the Company had, indeed, violated the FMLA. (*Id.*) Nonetheless, Nussbaum, on or before April 21, 1997, refused to rehire Buser. (*Id.* at ¶ 22.)

Buser alleges that at or prior to the time of her discharge from the Company, Defendants knew or should have known that (1) Buser's husband suffered from a spinal cord disease, was disabled, was confined to a wheelchair, and was incapable of working, (2) her Southern income was important to her, (3) the loss of her Southern income would aggravate her muscle disorder and cause her stress, (4) the loss of her Southern income would cause her to suffer severe emotional distress, and (5) Buser's only other family income was her hus-

---

1. The Court sets forth the facts viewed in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994), *cert. denied,* 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995).

 **559**

band's Social Security receipts. (*Id.* at ¶¶ 13, 23.)

On July 28, 1998, Buser initiated the present action by filing her Complaint [Document # 1]. Among other things, she alleged violations of the FMLA and asserted state causes of action for discharge in violation of public policy, intentional infliction of emotional distress, and negligent infliction of emotional distress. On September 29, 1998, Defendants filed the motion now before this Court. For the reasons stated herein, the Court will grant in part and deny in part Defendants' Motion to Strike and Dismiss.

## III. STANDARD OF REVIEW

With respect to a motion to dismiss for failure to state a claim upon which relief can be granted, dismissals are allowed only in very limited circumstances. *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). Generally, a court should not dismiss a complaint for failure to state a claim "unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied*, 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995).

## IV. MOTION TO STRIKE

Defendants' motion to strike is directed at paragraphs 21, 22, and 27 of Buser's Complaint. Pursuant to paragraph 21, Buser alleges that (1) after Nussbaum terminated Buser's employment with the

---

**2.** It appears to the Court that the first sentence of paragraph 27, which does not directly address the USDOL's findings, is not implicated by Defendants' motion to strike.

**3.** The rule provides as follows:

Company, the USDOL investigated whether Southern, in dismissing Buser, violated provisions of the FMLA and (2) on April 10, 1997, the USDOL informed Southern—through its legal representative—of its view that the Company had, indeed, violated the FMLA. (Compl. at ¶ 21.) In paragraph 22, Buser asserts that Nussbaum, on or before April 21, 1997, refused to rehire her. (*Id.* at ¶ 22.) Paragraph 27 includes an allegation that Nussbaum's refusal to rehire Buser was in retaliation for Buser's filing of a USDOL complaint. (*Id.* at ¶ 27.)[2] For the foregoing reasons, Defendants motion to strike is denied.

 Pursuant to the Federal Rules of Civil Procedure, in certain circumstances a "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "[T]he function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983). But despite this beneficial purpose, such motions "are viewed with disfavor and are infrequently granted." *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977).

Defendants set forth two separate grounds for their motion to strike paragraphs 21, 22, and 27 of the Complaint. First, they contend that the Defendants' decision to forgo rehiring Buser was "a term of settlement in negotiations between [D]efendants, [Buser,] and the [USDOL] in an early stage of this litigation." (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 7.) As a result, Defendants, citing Rule 408 of the Federal Rules of Evidence,[3] maintain that such information would be inadmissible as evidence of any liability on

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity

the part of Defendants. (*Id.* at 7–8.). Second, Defendants argue that, to the extent Buser seeks to rely on the USDOL investigation as imposing liability upon Defendants, she would be precluded from doing so because the USDOL's determinations and/or settlement proposals do not have any preclusive effect. (*Id.* at 8–9.)

It is not clear to the Court, at this stage in the litigation, as to what purpose Buser intends to use (or attempt to use) any evidence which may be developed relating to the USDOL and its alleged investigation. However, to the extent that motions to strike are generally disfavored and strictly construed, the Court in its discretion declines at this time to strike paragraphs 21, 22, and 27 of the Complaint. Defendants' motion to strike is denied.

## V. MOTION TO DISMISS

Having concluded that Defendants' motion to strike is denied, the Court will now address Defendants' motion to dismiss. As noted, Buser alleges violations of the FMLA and asserts state causes of action for discharge in violation of public policy, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Court notes, however, that Buser has not labeled each of her eight causes of action. Nor does she clearly indicate in every instance the specific tort or other claim asserted. These failings notwithstanding, the Court has been able to identify the following claims correlating to each of Buser's eight causes of action: (1) violation of the FMLA; (2) discharge in violation of public policy; (3) discharge in

> of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
> Fed.R.Evid. 408.

violation of public policy (seeking punitive damages); (4)–(5) intentional infliction of emotional distress;[4] (6) intentional infliction of emotional distress (seeking punitive damages); (7) negligent infliction of emotional distress; (8) negligent infliction of emotional distress (seeking punitive damages).

Defendants' motion to dismiss is directed at all claims as they relate to both Defendants, with the following exception: Defendants do not at this time seek dismissal of Buser's first cause of action (violation of the FMLA) to the extent that it is asserted against the Company. This Court will address the claims in the order presented in the Complaint and, since both Defendants challenge Buser's intentional and negligent infliction of emotional distress causes of action on similar grounds, the Court will analyze those claims together.

### A. *Violation of the FMLA (as asserted against Nussbaum individually)*

Buser's first cause of action contains allegations that both Defendants separately violated provisions of the FMLA. (Compl.¶¶ 6–14.) Specifically, she asserts that Southern, through Nussbaum, discharged her despite the fact that she was on medical leave. (*Id.* at ¶ 11.) With their motion, Defendants contend that her claim should be dismissed to the extent that it is asserted against Nussbaum individually because he cannot be considered an "employer" under the FMLA. (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 13–15.)[5] This Court disagrees.

4. The Court notes that Buser's fifth cause of action repeats her first cause of action to the extent that she asserts that "[Nussbaum] ... clearly violated the FMLA...." The Court will treat this allegation as redundant and will analyze her claims with respect to the FMLA in connection with the contentions in her first cause of action.

5. The Court notes that Buser fails to address Defendants' argument regarding the individual FMLA claim in her Brief in Opposition to Defendants' Motion to Strike and Dismiss.

■ The FMLA, among other things, prohibits employers from interfering with an employee's right to take medical leave under the statute. *See* 29 § U.S.C. 2615(a). Under the FMLA,

> [t]he term "employer" ... (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year; (ii) *includes ... (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer;* and (II) any successor in interest of an employer; (iii) includes any "public agency", as defined in section 203(x) of this title; and (iv) includes the General Accounting Office and the Library of Congress.

29 U.S.C. § 2611(4)(A) (emphasis added). Thus, the plain language of the statute would appear to indicate that individual liability may be imposed under the FMLA. Nonetheless, Defendants maintain that the definition of employer under the FMLA "has been interpreted by the courts as providing for respondeat superior liability only and *not* as allowing liability to be imposed on individuals who, themselves personally, are not employers." (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 14 (emphasis in original).) This Court acknowledges that some district courts have concluded that individual liability cannot be imposed under the FMLA. *See, e.g., Carter v. Rental Uniform Svc. of Culpeper, Inc.,* 977 F.Supp. 753 (W.D.Va.1997); *Frizzell v. Southwest Motor Freight, Inc.,* 906 F.Supp. 441 (E.D.Tenn.1995). However, the majority view is otherwise. *See. e.g., Carpenter v. Refrigeration Sales Corp.,* 49 F.Supp.2d 1028, 1030 (N.D.Ohio 1999) ("Defendants do not dispute that supervisors and managers can be held individually liable under the FMLA under certain circumstances. Indeed, this is the majority view."); *Meara v. Bennett,* 27 F.Supp.2d 288, 291 (D.Mass.1998) ("Although the court has been unable to locate any Court of Appeals decisions addressing the issue of individual liability under the recently-enacted FMLA, the decisional law developing at the district court level favors individual liability."); *Bryant v. Delbar Prods., Inc.,* 18 F.Supp.2d 799, 807 (M.D.Tenn. 1998) ("[T]he majority of courts that have reached this issue have held that individual liability does exist under the FMLA.").

Those courts that have interpreted the FMLA as allowing for individual liability have uniformly noted that the definition of employer in the FMLA more closely resembles the following definition of employer as contained in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.:*

> "Employer" includes *any person acting directly or indirectly in the interest of an employer* in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d) (emphasis added); *see also, e.g., Meara,* 27 F.Supp.2d at 291 ("Courts addressing the issue have noted the virtually word-for-word similarity between the definition of employer in the FMLA and the wording of the Fair Labor Standards Act...."); *Stubl v. T.A. Sys., Inc.,* 984 F.Supp. 1075, 1084 (E.D.Mich. 1997) ("[T]he definition of employer in the FMLA and FLSA are nearly identical."). Noting this similarity, these courts have routinely relied on FLSA case law—as opposed to Title VII, ADEA, and ADA jurisprudence—when interpreting the definition of employer. *See, e.g., Wascura v. Carver,* 169 F.3d 683, 685–87 (11th Cir. 1999) (holding that the definition of employer in the FMLA should be interpreted based upon FLSA—not Title VII, ADEA, and ADA—precedent); *Kilvitis v. County of Luzerne,* 52 F.Supp.2d 403, 411 (M.D.Pa.1999) (noting that for the purposes of interpreting the definition of employer under the FMLA, "the majority of

courts have looked to FLSA individual liability case law"); *Knussman v. Maryland,* 935 F.Supp. 659, 664 (D.Md.1996) ("Liability under the FMLA is essentially the same as liability under the FLSA."). FLSA case law clearly indicates that individual liability may be imposed under certain circumstances. *See Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."); *see also, e.g., Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406, 412 (1973); *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991); *Lee v. Coahoma County,* 937 F.2d 220, 226 (5th Cir.1991); *Brock v. Hamad,* 867 F.2d 804, 808 n. 6 (4th Cir. 1989). Notably, the Fourth Circuit in *Brock* forestalled any argument by the defendant in that case that he could not be individually liable under the FLSA:

> [U]nder the FLSA, the Government may sue the "employer" who is responsible for complying with the various provisions of the [FLSA]. An "employer" is defined by the FLSA to include "any person acting directly or indirectly in the interests of an employer in relation to any employee...." 29 U.S.C. § 203(d). In this case, [the defendant] clearly was the employer; it is not disputed that he hired and directed the employees who worked for the enterprise. *Even if the businesses were within a corporate structure, [the defendant] would still be the employer who would be liable for violations of the FLSA.*

*Brock,* 867 F.2d at 808 n. 6 (citing *Agnew,* 712 F.2d at 1511, 1514) (emphasis added).[6] This Court therefore concludes, consistent with the majority view, that individual liability may, indeed, be imposed under the FMLA.

Notwithstanding this conclusion, Defendants argue that "[b]ecause Congress limited the application of the FMLA to employers based solely on the number of employees they employ, ... individual liability should not be imposed under the FMLA." (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 14–15.) In support of this argument, Defendants cite *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.), *cert. denied,* 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994), in which the Fourth Circuit held that the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 612 *et seq.,* limits civil liability to the corporate employer and, therefore, individual employees may not be sued under that statute. *Id.* at 511. Under the ADEA, the term "employer" is defined as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 29 U.S.C. § 630(b). The term also includes "*any agent* of such a person...." *Id.* (emphasis added). In holding that no individual liability could be imposed under the ADEA, the Fourth Circuit characterized the statutory reference to "any agent" as "an unremarkable expression of respondeat superior—that discriminatory personnel actions taken by an employer's agent may create liability for the employer." *Birkbeck,* 30 F.3d at 510. In partial sup-

---

6. The Court acknowledges that at least one district court, in holding that individual liability under the FMLA is not available, expressly distinguished *Brock:*

> In *Brock,* unlike here, in addition to being an employee, the individual defendant also '... clearly was the employer; it is not disputed that [the individual defendant] hired and directed the employees who worked for the enterprise....' Nothing in Ms. Carter's complaint purports to assign

such an 'employer' status, either in fact or in form, to Mr. Dods.

*Carter v. Rental Uniform Svc. of Culpeper, Inc.,* 977 F.Supp. 753, 759–60 (W.D.Va.1997) (alterations and omissions in original). This interpretation notwithstanding, this Court does not read *Brock* as standing for the limited proposition that individual liability may attach only in situations where the individual is also the owner of the employing business.

port of its ruling, the court noted that employers who have fewer than twenty workers need not comply with the ADEA and, therefore, "it would be incongruous to hold that the ADEA does not apply to the owner of a business employing, for example, ten people, but that it does apply with full force to a person who supervises the same number of workers in a company employing twenty or more." *Id.*

The Fourth Circuit recently relied on *Birkbeck* in holding that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Svc., Inc.,* 159 F.3d 177, 180 (4th Cir.1998). Pursuant to Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and *any agent* of such a person. . . . 42 U.S.C. § 2000e(b)" (emphasis added). The Fourth Circuit considered this statutory definition of employer "similar" to the provision contained in the ADEA. *Lissau,* 159 F.3d at 180.

This Court acknowledges that the definition of employer under the FMLA—like the respective provisions of the ADEA and Title VII—contains a requirement that the person employ a minimum number of workers. However, because this Court considers both *Birkbeck* and *Lissau* distinguishable on two separate grounds, the Court finds that, in the context of the FMLA, this limitation should not be read to preclude individual liability. First, unlike the ADEA and Title VII, the FMLA definition of employer is not limited to "agency" relationships but instead includes broader language, capturing "any person who acts, directly or indirectly, in the interest of an employer to any of the em-

ployees of such employer." 29 U.S.C. § 2611(4)(A); *see also Stubl,* 984 F.Supp. at 1084 ("[M]ost courts have ruled [that] the definition of 'employer' under the FMLA is comparable to the definition of employer under the Fair Labor Standards Act. . . , which has been interpreted more broadly than Title VII to include individual liability for supervisory personnel.").[7] Second, unlike the statutes at issue in *Birkbeck* (ADEA) and *Lissau* (Title VII), FMLA regulations include a direct statement that individual liability may be imposed:

> An "employer" includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees. The definition of "employer" in . . . the Fair Labor Standards Act . . . similarly includes any person acting directly or indirectly in the interest of an employer in relation to an employee. As under the FLSA, individuals such as corporate officers "acting in the interest of an employer" are individually liable for any violations of the requirements of FMLA.

29 C.F.R. § 825.104(d).

■ Having concluded that individual liability may be imposed under the FMLA, an additional assessment of the adequacy of Buser's factual allegations must be made. Buser alleges that Nussbaum "was an officer of Southern where he served as a vice-president," (Compl.¶ 5), and that "all [of] his . . . alleged actions were within the scope of his employment and done in . . . furtherance of his duties with Southern," (*id.*). Defendants contend that such allegations are insufficient to state a claim against Nussbaum for a violation of the FMLA. (Br. in Supp. of Defs.' Mot. to

---

7. The First Circuit has also noted that the FLSA definition of employer—which, as previously noted, is nearly identical to that contained in the FMLA—has been construed broadly: "Taken literally [the definition] would support liability against any agent or employee with supervisory power over other employees. It has, indeed, been interpreted

expansively. In determining employer status, 'economic reality' prevails over *technical common law concepts of agency.*" *Donovan v. Agnew,* 712 F.2d 1509, 1510 (1st Cir.1983) (citing *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)) (emphasis added).

Strike and Dismiss at 13–14.) Specifically, they assert that

> [she] has alleged only that ... Nussbaum was an officer of ... Southern ... and that his actions were within the scope of his employment and done in furtherance of his duties with Southern .... [Buser] has failed to even allege that ... Nussbaum acted in the interest of Southern ... or that ... Nussbaum is a successor in interest of ... Southern....

(*Id.*) Despite this assertion, for the reasons set forth below this Court finds Buser's allegations to be sufficient for the purposes of alleging the necessary level of authority in order to establish individual liability under the FMLA.

As discussed previously, the FMLA and FLSA definitions of employer are nearly identical. Although the Fourth Circuit is yet to squarely address the level of authority which must be present in order to hold an individual liable under either statute, the court has provided some guidance. In *Brock*, the court noted that liability could be imposed upon an individual under the FLSA where that individual "hired and directed the employees who worked for the enterprise." *Brock*, 867 F.2d at 808 n. 6. Here, Buser has alleged, among other things, that Nussbaum (1) was Vice President of Southern, (Compl. ¶ 5), (2) at all relevant times was acting within the scope of his employment with Southern, (*id.*), (3) at all relevant times was acting in furtherance of his duties with Southern, (*id.*), and (4) made the ultimate decision to terminate her, (*id.* at ¶ 11). Based upon these allegations and in light of *Brock*, this Court finds that Buser has sufficiently alleged that Nussbaum maintained a level of authority that would allow for individual liability under the FMLA definition of employer. Accordingly, to the extent that Defendants' motion is directed towards her FMLA cause of action against Nussbaum individually, said motion is denied.

## B. *Discharge in Violation of Public Policy*

■ Buser next alleges a claim of discharge in violation of public policy in her second and third causes of action. (Compl. ¶¶ 15–19.) Specifically, she asserts that her termination was "in violation of ... the public good and/or against the public policy of ... North Carolina...." (*Id.* at ¶ 17.) With their motion, Defendants contend that her claim should be dismissed because there exists no expression of public policy proscribing Defendants' alleged conduct. (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 2–3.) This Court agrees.

The Supreme Court of North Carolina first pronounced the public policy exception to the employment-at-will doctrine in *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989):

> "[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent."

*Id.* at 175, 381 S.E.2d at 447 (quoting *Sides v. Duke Univ.*, 74 N.C.App. 331, 342, 328 S.E.2d 818, 826 (1985)) (alteration in original). The *Coman* court stated that "[p]ublic policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* at 175 n. 2, 381 S.E.2d at 447 n. 2. The Supreme Court of North Carolina more recently noted that "[a]lthough th[is] definition of 'public policy' ... does not include a laundry list of what is or is not 'injurious to the public or against the public good,' at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*,

331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992).

As stated previously, Defendants argue that Buser cannot, as a matter of law, identify any statutory expression of public policy to invoke the public policy exception cited above. Specifically, they contend that "[t]he North Carolina General Statutes include no express policy declaration concerning discharges in violation of the FMLA nor do the North Carolina General Statutes have a[n] FMLA equivalent statute which could be used as the basis for this claim." (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 3.) In response to Defendants' motion, Buser cites to a provision within Title 25 of the North Carolina Administrative Code, which provides as follows:

> The Family and Medical Leave Act of 1993 was passed by Congress to balance the demands of the workplace with the needs of families; to promote the stability and economic security of families; to promote national interests in preserving family integrity; to minimize the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons; and to promote the goal of equal employment opportunity for women and men. These Rules provide for the implementation of the Family and Medical Leave Act of 1993 as it pertains to those employees subject to G.S. 126.

N.C.Admin.Code tit. 25, r. 1E.1400.1401.[8] This provision was enacted by the North Carolina Office of State Personnel ("NCOSP") and promulgated pursuant to the following statutory authorization: "Subject to the approval of the Governor, the State Personnel Commission shall establish policies and rules governing ... [h]ours and days of work, holidays, vacation, sick leave, and other matters pertain-

ing to the conditions of employment...." N.C.Gen.Stat. § 126-4(5). Buser characterizes the administrative statement as "an express public policy declaration concerning the FMLA." (Br. in Opp'n to Defs.' Mot. to Strike and Dismiss at 6.) In reply, Defendants assert that it "is not an expression of North Carolina public policy or even an adoption of federal policy or law but is instead merely the equivalent of North Carolina's employment handbook for state employees...." (Reply to Pl.'s Br. in Opp'n to Defs.' Mot. to Strike and to Dismiss at 2.) Although this Court considers the cited provision an express approval by the NCOSP of the FMLA and the FMLA's purposes as it may apply to state employees, the Court, for the reasons stated below, finds that it is an inadequate basis upon which to identify a public policy for the State of North Carolina and expand the exception to the employment-at-will doctrine.

As the North Carolina courts have noted, "[t]he public policy exception to the employment-at-will doctrine is a 'narrow exception.'" *Roberts v. First–Citizens Bank & Trust Co.*, 124 N.C.App. 713, 721, 478 S.E.2d 809, 814 (1996) (quoting *Williams v. Hillhaven Corp.*, 91 N.C.App. 35, 39, 370 S.E.2d 423, 425 (1988)); *see also Kurtzman v. Applied Analytical Inds., Inc.*, 347 N.C. 329, 334, 493 S.E.2d 420, 423 (1997) (characterizing the exceptions to the employment-at-will doctrine as "narrow"). This is even more so the case where the Supreme Court of North Carolina has pronounced that "at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina *General Statutes*." *Amos*, 331 N.C. at 353, 416 S.E.2d at 169 (emphasis added). Here, the express policy declaration Buser seeks to invoke is not contained in a state statute, as implied in *Amos*, but,

---

8. The provision's citation to "G.S. 126" refers to Chapter 126 of the North Carolina General Statutes, entitled "State Personnel System." "[T]he intent and purpose of this Chapter to establish for the government of the State a system of personnel administration under the Governor, based on accepted principles of personnel administration and applying the best methods as evolved in government and industry...." N.C.Gen.Stat. § 126-1.

rather, consists of an administrative agency's statement expressing approval and support for a federal statute.

This conclusion notwithstanding, the Court notes that Buser cites *Coman* itself for the proposition that "the public policy of North Carolina can be established in the North Carolina Administrative Code." (Br. in Opp'n to Defs.' Mot. to Strike and Dismiss at 6.) This Court acknowledges that *Coman* involved conduct in contravention of certain provisions of the Administrative Code. However, this Court finds that the code provision in *Coman* is materially different in scope from the statement by the NCOSP regarding the FMLA.[9] The *Coman* court cited Section 3D.0800.0801 of Title 19A. That section, entitled "Safety of Operation and Equipment," essentially incorporates various federal transportation regulations into North Carolina law. Promulgated by the Division of Motor Vehicles, it applies to the public at large. By contrast, the regulation cited by Buser was set forth by the NCOSP for the purpose of establishing a leave program only for state employees.[10] Although such a group of individuals may be relatively sizable, there is nothing in the NCOSP provision or in the statute authorizing its creation which would indicate that it was intended to serve as a declaration of public policy by and for the entire State of North Carolina.[11]

■ The Court further notes, however, that a plaintiff alleging a claim of discharge in violation of public policy is not necessarily prevented from bringing her claim merely because she cannot cite to a specific statutory declaration. *See Amos,*

331 N.C. at 353, 416 S.E.2d at 169 ("Although the definition of 'public policy' approved by this [Supreme] Court [of North Carolina] does not include a laundry list of what is or is not 'injurious to the public or against the public good,' *at the very least* public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." (emphasis added)). Based on the holdings in *Sides, Coman,* and *Amos,* "a definition of 'public policy' has evolved which connotes the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Johnson v. Mayo Yarns, Inc.,* 126 N.C.App. 292, 296, 484 S.E.2d 840, 842–43 (1997). The parties have not identified, and the Court has not located, any case holding that an alleged discharge of an employee despite a valid leave under the FMLA would have "a tendency to be injurious to the public or against the public good."

In light of *Amos,* even if such conduct has not been specifically proscribed by the legislature it may be incumbent upon the Court to perform an independent review of whether the alleged conduct by Defendants violated the public policy of North Carolina. While discharging an employee who has taken a valid leave of absence pursuant to the FMLA raises serious concerns for this Court, the Court nonetheless declines to hold, in the absence of North Carolina precedent, that this rises to the level of a public policy concern to justify creating a new and distinct *Coman* claim. *See, e.g., Tompkins v. Allen,* 107 N.C.App.

---

9. Although this Court finds that the Administrative Code provision in *Coman* is materially different from the provision cited by Buser in this case, the Court also notes that the *Coman* court also cited to sections of the North Carolina General Statutes as sources of public policy of the State. In contrast, Buser has not pointed to any statute in support of her argument.

10. The Court notes that it is clear from Buser's pleadings that she is not an employee of the State of North Carolina.

11. As a matter of statutory interpretation, the Court notes that the North Carolina legislature has, on other occasions, clearly expressed its desire to set state-wide public policy. *See, e.g.,* N.C.Gen.Stat. § 143–422.1 *et seq.* (North Carolina's Equal Employment Practices Act). But it was not done in this instance with respect to the FMLA.

620, 623, 421 S.E.2d 176, 178 (1992) (where plaintiff alleged that employer intentionally altered certain inventory records 'for which plaintiff was responsible and then used said records as a reason to terminate plaintiff's employment, court noted that "[w]hile plaintiff's evidence tends to show bad faith, not to be condoned, such behavior does not rise to the level of public policy concern"). "In determining whether to enlarge the scope of the public policy exceptions to the employment-at-will doctrine, [a court] must focus on the public interests involved." *Teleflex Info. Sys., Inc. v. Arnold*, 132 N.C.App. 689, 513 S.E.2d 85, 88 (1999). The case of *McLaughlin v. Barclays American Corp.*, 95 N.C.App. 301, 382 S.E.2d 836, *cert. denied*, 325 N.C. 546, 385 S.E.2d 498 (1989), is instructive. In *McLaughlin*, a manager sued his employer for discharge in violation of public policy after he was discharged for alleging defending himself in a physical altercation with a subordinate. In rejecting the manager's argument that his discharge for acting in his own defense violated public policy, the court, after reviewing *Sides* and *Coman*, noted as follows:

> The[se] two North Carolina cases which have used public-policy grounds to find exceptions to the at-will doctrine have involved allegations of the employee's being affirmatively instructed to violate the law. In each case, our courts focused on the potential harm to the public at large if those instructions were obeyed. Similar public-policy implications are not present in [this] case. We do not perceive the kind of deleterious consequences for the general public, if we uphold [the employer's] action, as might have resulted from decisions favorable to the employers in *Sides* and *Coman*.

*Id.* at 306, 382 S.E.2d at 839–40. Here, although Buser alleges that Defendants themselves violated a law (the FMLA) in terminating her, there is no allegation that they affirmatively instructed her to engage in any illegal conduct. *See Teleflex*, —— N.C.App. at ——, 513 S.E.2d at 89 (finding

no potential harm to the public at large where no evidence suggested employer encouraged employee to violate any law). Moreover, like the court in *McLaughlin*, this Court does not predict "deleterious consequences" if Buser's claim is dismissed, especially where, as in this case, she has properly alleged a direct statutory cause of action under the FMLA for Defendants' alleged wrongful behavior. Moreover, in light of the fact that the discharge in violation of public policy exception to the employment-at-will doctrine is a narrow one, *see Roberts*, 124 N.C.App. at 721, 478 S.E.2d at 814, any expansion of public policy in this area is better left to the legislature of North Carolina or its courts.

As a final matter with respect to Buser's claim of discharge in violation of public policy, the Court notes that Buser argues in her Brief in Opposition to Defendants' Motion to Strike and Dismiss that even if the Administrative Code provision discussed above is an insufficient expression of the public policy of North Carolina, her cause of action should not be dismissed because she has adequately alleged alternatively that her employment was terminated for an unlawful reason. (Br. in Opp'n to Defs.' Mot. to Strike and Dismiss at 8–9.) However, this Court finds that this argument is based on a misreading of the central mandate of the public policy exception to the employment-at-will doctrine, to wit, that " 'there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy....' " *Coman*, 325 N.C. at 175, 381 S.E.2d at 447 (quoting *Sides v. Duke Univ.*, 74 N.C.App. 331, 342, 328 S.E.2d 818, 826 (1985)). Buser contends that this clause should be construed as prohibiting a termination of an at-will employment arrangement when such discharge is carried out for either (1) an unlawful reason *or* (2) a purpose that contravenes public policy. (Br. in Opp'n to Defs.' Mot. to Strike and Dismiss at 8–9.) The North Carolina courts, however, have generally interpreted the clause as creat-

ing only *one* public policy exception. *See, e.g., Paschal v. Myers,* 129 N.C.App. 23, 497 S.E.2d 311, 315 (1998) (listing the "unlawful reason or purpose that contravenes public policy" clause as the second of two exceptions); *Boesche v. Raleigh–Durham Airport Auth.,* 111 N.C.App. 149, 152, 432 S.E.2d 137, 139–40 (1993) (citing the "unlawful reason or purpose that contravenes public policy" clause as one exception). *But see Privette v. University of North Carolina,* 96 N.C.App. 124, 133–34, 385 S.E.2d 185, 190 (1989) (applying the "unlawful reason or purpose that contravenes public policy" clause as if it established two separate exceptions).[12] This Court, in the absence of clear North Carolina precedent, will not recognize a separate "unlawful reason" exception to the employment-at-will doctrine. Accordingly, based upon the Court's finding, Buser has failed to properly state a claim of discharge in violation of public policy. As such, her causes of action numbered two and three, raising discharge in violation of public policy, are hereby dismissed.

### C. Intentional and Negligent Infliction of Emotional Distress

Buser has also alleged a claim of intentional infliction of emotional distress in her fourth, fifth, and sixth causes of action. (Compl.¶¶ 20–31.) Specifically, she asserts that Defendants engaged in "outrageous conduct with . . . intent [to] inflict[ ] severe emotional and mental suffering. . . ." (*Id.* at ¶ 31) In addition, she has alleged a claim of negligent infliction of emotional distress in her seventh and .eighth causes of action. (*Id.* at ¶¶ 32–36.) With respect

to that claim, Buser asserts that Defendants' actions "constituted negligent[,] willful, wanton, [and] malicious conduct . . . ." (*Id.* at ¶ 33.)

With their motion, Defendants challenge Buser's intentional and negligent infliction of emotional distress causes of action on multiple, similar grounds. First, they assert that the claims are barred by the exclusivity provisions of the North Carolina Workers' Compensation Act ("WCA" or "the Act"), N.C.Gen.Stat. § 97–1 *et seq.* (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 3–5.) Second, Defendants maintain that Buser's intentional and negligent infliction of emotional distress causes of action are preempted by the FMLA. (*Id.* at 5–7.) Third, they argue that the claims should be dismissed because they are based on allegations contained in paragraphs 21, 22, and 27 of the Complaint, paragraphs which Defendants contend should be stricken. (*Id.* at 7–9.) Lastly, they contend that, even if such claims are not dismissed as in conflict with the WCA and the FMLA, or as a result of the motion to strike, Buser has failed to allege facts sufficient to properly state each cause of action. (*Id.* at 9–13.) This Court will address each of these grounds in turn.

### 1. Motion to Dismiss Based upon the Exclusivity Provisions of the WCA

■ Defendants first argue that Buser's claims for intentional and negligent infliction of emotional distress should be dismissed because they are barred by the

12. The Court notes that Defendants fully argue—for the first time—in their Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Strike and to Dismiss that even if Buser's claim of discharge in violation of public policy is properly alleged, (1) it is preempted by the FMLA and, in the alternative, (2) the cause of action should nonetheless be dismissed to the extent that it is asserted against Nussbaum. (Reply to Pl.'s Br. in Opp'n to Defs.' Mot. to Strike and to Dismiss at 3–4.) In support of the second of these two assertions, Defendants state that "Nussbaum was not [Buser]s 'employer' for the tort of wrong-

ful discharge. . . ." (*Id.* at 3.) Since these two arguments were not raised in their Brief in Support of Defendants' Motion to Strike and Dismiss, Buser had no reason to and therefore did not address them in her Brief in Opposition to Defendants' Motion to Strike and Dismiss. In addition, the Local Rules of Civil Practice of the United States District Court for the Middle District of North Carolina specifically state that "[a] reply brief is limited to discussion of matters newly raised in the response." LR 7.3(h). Accordingly, this Court declines to consider these issues at this time.

WCA. (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 3–5.) Specifically, they assert that they "are not of the sort which fall within the limited exception to the Exclusivity Rule," (*id.* at 3), "[n]or is the alleged conduct of ... Nussbaum ... of the sort which falls within the limited exception to the Exclusivity Rule for co-workers/supervisors ...," (*id.* at 4). For the following reasons, this Court finds that neither cause of action is barred by the WCA.

Pursuant to the North Carolina Workers' Compensation Act ("WCA" or "the Act"), N.C.Gen.Stat. § 97–1 *et seq.*,

> every employer and employee ... shall be presumed to have accepted the provisions of this Article [the WCA] respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of his employment and shall be bound thereby.

*Id.* § 97–3. In exchange for such compensation, employees relinquish certain rights and remedies:

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee ... shall exclude all other rights and remedies of the employee ... as against the employer at common law or otherwise on account of such injury or death.

*Id.* § 97–10.1; *see also Pleasant v. Johnson*, 312 · N.C. 710, 712, 325 S.E.2d 244, 246–47 (1985) (noting that in "the typical workers' compensation scheme ... the employee and his dependents give up their common law right to sue the employer for negligence in exchange for limited but assured benefits").

At least one court has directly addressed the issue of whether a negligent infliction of emotional distress claim is barred by the exclusivity provisions of the WCA. In *Ridenhour v. Concord Screen Printers, Inc.*, 40 F.Supp.2d 744 (M.D.N.C.1999), the court considered whether a plaintiff who alleged negligent infliction of emotional distress as a result of sexual harassment by her employer could bring such a claim notwithstanding § 97–10.1. In concluding that her cause of action was not barred by the Act, the court, relying on *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116 (1986), reasoned that the "nature of the injury" alleged by the plaintiff was not the type of injury the WCA sought to remedy. *Ridenhour*, 40 F.Supp.2d at 746.[13] In *Hogan* the Court of Appeals of North Carolina held that a particular plaintiff's claim of negligent retention, alleging mental distress and humiliation as a proximate result thereof, was not barred by the exclusive remedies provision of the Act. *Id.* at 124, 340 S.E.2d at 496. Consistent with the provisions of the WCA, the court in *Hogan* noted that "[a]lthough the Act eliminated negligence as a basis of recovery against an employer, the Act covers only those injuries which arise out of and [occur] in the course of employment." *Id.* The court concluded that the plaintiff's alleged injury did not fall within this parameter:

> The emotional injury allegedly suffered by [the plaintiff], resulting from the [co-employee]'s sexual harassment, is not, in our view, a "natural and probable consequence or incident of the employment."

---

13. As alluded to in § 97–3 above, the Act defines "injury" to include "only injury by accident arising out of and in the course of the employment...." N.C.Gen.Stat. § 97–2(6). (The definition also specifically addresses "diseases," "back injuries," "disabling physical injuries," "breakage or damage to eyeglasses, hearing aids, dentures, or other prosthetic devices which function as part of the body...." N.C.Gen.Stat. § 97–3(6). It does not address non-physical effects.) An injury arises out of the course of employment "'when it is a natural and probable consequence or incident of the employment and a natural result' of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment.'" *Robbins v. Nicholson*, 281 N.C. 234, 239, 188 S.E.2d 350, 354 (1972) (quoting *Perry v. American Bakeries Co.*, 262 N.C. 272, 274, 136 S.E.2d 643, 645 (1964)).

**570**

Sexual harassment is not a risk to which an employee is exposed because of the nature of the employment but is a risk to which the employee could be equally exposed outside the employment. Therefore, [the plaintiff]'s claim is neither covered nor barred by the Act. *Id.* (citation omitted). Similarly, in *Harrison v. Edison Bros. Apparel Stores, Inc.*, 724 F.Supp. 1185 (M.D.N.C.1989), *rev'd on other grounds,* 924 F.2d 530 (4th Cir.1991), the court held that the plaintiff's negligent retention claim was *not* barred by the exclusive remedies provision of the Act. The plaintiff in *Harrison* argued that the type of injuries alleged do not fall within those covered by the Act. The court agreed: "[The defendant] would have this court hold that the type of injuries alleged by the plaintiff, 'severe mental and emotional distress' resulting from sexual harassment, are a natural risk of employment. This position was rejected by the North Carolina Court of Appeals in *Hogan.*" *Id.* at 1191.

The *Hogan* court also held that the plaintiffs' claims for intentional infliction of emotional distress were not barred by the WCA. *Hogan,* 79 N.C.App. at 490, 340 S.E.2d at 121. The court in *Hogan* first noted that the Act was designed "to furnish compensation for loss of earning capacity," *id.* at 489, 340 S.E.2d at 120, and that the "plaintiffs apparently have suffered damages which would be recoverable in a civil action but which are not compensable under the Act," *id.* The court then focused on the nature of the injuries normally associated with such claims and ruled as follows: "The essence of the tort of intentional infliction of emotional distress is *non-physical;* the injuries alleged by [the] plaintiffs do not involve physical injuries resulting in disability. Therefore, we conclude that [the] plaintiffs' actions for intentional infliction of emotional distress are *not barred* by G.S. § 97–10.1." *Id.* at 490, 340 S.E.2d at 121 (emphasis added).

In their reply, Defendants cite a recent case, *Johnson v. First Union Corp.,* 131 N.C.App. 142, 504 S.E.2d 808 (1998), for the proposition that "intentional torts *are*

subject to [Rule] 12(b)(6) dismissal because of the exclusivity doctrine." (Reply to Pl.'s Br. in Opp'n to Defs.' Mot. to Strike and to Dismiss at 4 (emphasis in original).) In *Johnson,* the Court of Appeals of North Carolina agreed with the defendants' contention that the WCA "gives the North Carolina Industrial Commission exclusive jurisdiction over workers' compensation claims and all related matters, *including issues such as those raised in the case at bar.*" *Johnson,* 131 N.C.App. at 143–44, 504 S.E.2d at 809 (emphasis added). The plaintiff in *Johnson* had alleged fraud, bad faith refusal to pay or settle a valid claim, unfair and deceptive trade practices, civil conspiracy, and intentional infliction of emotional distress claims. *Id.* at 143, 504 S.E.2d 808, 504 S.E.2d at 809. Therefore, *Johnson* might be interpreted as holding that intentional infliction of emotional distress *is* barred by the Act, and is therefore in conflict with *Hogan.* Even if such a reading were possible, this Court finds *Johnson* distinguishable from the instant action. First, the Court notes that the conduct in *Johnson* giving rise to the plaintiff's intentional infliction of emotional distress claim occurred, unlike in the case before the Court, directly in connection with a WCA proceeding. Second, this Court notes that the *Johnson* court—unlike the *Hogan* panel—did not directly analyze the issue of whether the tort of intentional infliction of emotional distress is, in general, barred by the Act. It is also noteworthy that *Hogan* was not cited by *Johnson.*

■ Even if Buser had alleged that she sustained physical injuries as a result of Defendants' alleged negligent infliction of emotional distress, her claim would not be barred by the WCA because Defendants' conduct did not occur "in the course of" her employment. When determining whether an injury occurs in the course of employment, courts should consider "the time, place and circumstances under which an accident occurs." *Bare v. Wayne Poultry. Co.,* 70 N.C.App. 88, 91, 318 S.E.2d

534, 537 (1984), *rev. denied by* 312 N.C. 796, 325 S.E.2d 484 (1985). Here, Buser alleges that Defendants inflicted emotional injury by terminating her in the face of a valid medical leave with knowledge that such action would cause her severe hardship. Notably, Buser's alleged injury was not inflicted while she was at her place of employment, nor was it inflicted while she was engaging in the performance of her duties. *See Bare,* 70 N.C.App. at 91, 318 S.E.2d at 537.[14]

Thus, to the extent that Buser's alleged injuries are the same as those alleged in *Hogan* and *Harrison,* and since such injuries were not inflicted in the course of her employment, this Court declines to dismiss Buser's claims of intentional and negligent infliction of emotional distress on the ground that they are barred by the WCA.

2. Motion to Dismiss Based upon FMLA Preemption

■ Defendants next argue that Buser's claims for intentional and negligent infliction of emotional distress should be dismissed because they are preempted by the FMLA. (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 5–6.) Specifically, they assert that a fair interpretation of the FMLA's provision addressing the FMLA's effect on other laws precludes the simultaneous assertion of common law tort claims. (*Id.* at 5.) In response, Buser contends that Defendants' reading of the statute is unduly restrictive. (Br. in Opp'n to Defs.' Mot. to Strike and Dismiss at 9–10.) This Court agrees and, therefore, finds that neither cause of action is preempted by the FMLA.

The relevant section of the FMLA provides as follows:

(a) Federal and State antidiscrimination laws

Nothing in this Act or any amendment made by this Act shall be construed to modify or affect any Federal or State law prohibiting discrimination on the basis of race, religion, color, national origin, sex, age, or disability.

(b) State and local laws

Nothing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act.

29 U.S.C. § 2651. As noted previously, Defendants maintain that, since Section 2651 does not expressly refer to "state

---

**14.** The Court notes that *Zocco v. United States Dept. of Army,* 791 F.Supp. 595 (E.D.N.C. 1992), is not inconsistent with this Court's present ruling. In *Zocco,* the United States Army hired a contractor, which in turn hired a subcontractor, to supply and operate one of several rides during an Army fair. *Id.* at 596. The plaintiff was an employee of the subcontractor who, while performing his duties, was struck by a ride car and fell several feet, sustaining serious physical injuries. *Id.* at 597. The plaintiff subsequently sued the Army, the contractor, and the subcontractor for "negligence." *Id.* Prior to addressing the parties' procedural and substantive motions, the court, in an exercise it described as "worthwhile," summarized the WCA and its exclusivity provisions. *Id.* at 597–98. In doing so, the court stated that "these 'exclusivity provisions' prevent an employee from suing an employer for injuries attributable to the employer's negligence." *Id.* at 598 (citing *Horney v. Meredith Swimming Pool Co.,* 267 N.C. 521, 148 S.E.2d 554 (1966)). However, since the facts in *Zocco* involved an employee sustaining physical injuries while performing his duties, it is unclear whether the court—in making the above-quoted statement—was referring to *all* types of negligence and *all* types of injuries. Notably, even though both the *Hogan* and *Harrison* courts found that claims involving negligence (negligent retention) were not barred by the WCA, neither case was cited in *Zocco.* Thus, it is likely that the court in *Zocco* was speaking of "negligence" in terms of errant conduct on the part of an employer which results in physical injuries sustained by an employee while performing his duties. The same type of factual scenario was present in *Horney,* which *was* cited by the court in *Zocco. Horney* involved an employee who was electrocuted while installing a swimming pool light. It is clear that this was a physical injury that was sustained while the employee was acting within the scope of his employment and, therefore, was covered by the WCA.

common law," then such claims *are* precluded by the FMLA. (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 5–6.) This Court disagrees with Defendants' interpretation of the statute and, instead, finds that a plain reading of the provision and its sweeping language reveals that Congress did not intend the FMLA to supplant other claims, whether grounded in statutes or brought pursuant to state common law. *See, e.g., Desrochers v. Hilton Hotels Corp.*, 28 F.Supp.2d 693 (D.Mass.1998) (declining to dismiss plaintiffs' state claim of intentional infliction of emotional distress despite the fact that court held that plaintiffs' FMLA cause of action precluded their Massachusetts Civil Rights Act claim); *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F.Supp.2d 868 (S.D.Ohio) (granting summary judgment as to plaintiff's state claim of intentional infliction of emotional distress—as a result of factual deficiencies—despite the fact that court held that plaintiff's FMLA cause of action precluded her Section 1983 claim). Accordingly, this Court finds that neither claim is preempted by the FMLA.

### 3. Motion to Dismiss Based upon the Motion to Strike Paragraphs 21, 22, and 27 of the Complaint

Defendants also argue that Buser's claims for intentional and negligent infliction of emotional distress should be dismissed because they are at least partially based on the factual allegations contained in paragraphs 21, 22, and 27 of the Complaint, allegations which they contend should be stricken. (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 7–9.) Because this Court has previously concluded that granting a motion to strike paragraphs 21, 22, and 27 would be inappropriate at this time, the Court further finds that neither claim should be dismissed on similar grounds.

**15.** The Court notes that Buser fails to address Defendants' argument regarding "extreme and outrageous conduct" to the extent that it is directed towards her negligent infliction of

### 4. Motion to Dismiss Based upon a Failure to State a Claim

Lastly, Defendants assert that Buser's claims for intentional and negligent infliction of emotional distress must be dismissed because she has not alleged and cannot prove any facts which would sustain such causes of action. (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 9–13.) In support of this assertion, Defendants make three distinct arguments. This Court will address each in turn.

#### a) Extreme and Outrageous Conduct

Defendants first argue that Buser's claims for intentional and negligent infliction of emotional distress should be dismissed because the conduct alleged under both causes of action, even if true, does not rise to the level of behavior required. (*Id.* at 9–10.) [15] To the extent that Defendants direct this argument towards Buser's intentional infliction of emotional distress claim, this Court agrees.

 Under North Carolina law, in order to properly state a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct and (2) such conduct was intended to cause, and in fact does cause, severe emotional distress. *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992) (citing *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981)). Whether conduct alleged is sufficiently "extreme and outrageous" to support such an action is a question of law. *Lenins v. K–Mart Corp.*, 98 N.C.App. 590, 599, 391 S.E.2d 843, 848 (1990). Conduct is extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

emotional distress claim in her Brief in Opposition to Defendants' Motion to Strike and Dismiss.

*Briggs v. Rosenthal,* 73 N.C.App. 672, 677, 327 S.E.2d 308, 311 (1985).

 In this instance, Buser alleges conduct that is not, as a matter of law, sufficient to state a cause of action for intentional infliction of emotional distress. Essentially, Buser alleges that Defendants (1) demanded that she return to work despite the fact she had taken an approved leave of absence, (Compl.¶¶ 9–10), (2) terminated her in violation of federal law, (*id.* at ¶¶ 11, 27), and (3) took such action while Defendants knew, or should have known, of Buser's and her husband's poor medical conditions and financial straits, (*id.* at ¶¶ 13, 23).[16] While such conduct, if it occurred, might very well be objectionable, this Court finds that it does not rise to the level of "extreme and outrageous" action under North Carolina law for several reasons.

First, "[i]n employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable." *Haburjak v. Prudential Bache Sec., Inc.,* 759 F.Supp. 293, 302–03 (W.D.N.C.1991) (citing cases). As a result, even when a defendant's actions during the course of employment are considered "intemperate," such conduct will generally be insufficient to state a cause of action for intentional infliction of emotional distress. *See Hogan v. Forsyth Country Club Co.,* 79 N.C.App. 483, 493–94, 340 S.E.2d 116, 122–23 (1986) (conduct not "extreme and outrageous" when co-employee screamed and shouted at plaintiff, called her names, interfered with her supervision of waitresses under her charge and threw menus at her). Second, although the plaintiff in *Hogan* did not allege a violation of federal law, the *Hogan* court nonetheless dismissed one plaintiff's claim for intentional infliction of emotional distress despite the fact that the plaintiff alleged that

her manager refused her request for pregnancy leave of absence, directed her to carry heavy objects such as trash bags, vacuum cleaners, and bundles of linen weighing more than ten pounds, cursed at her, and refused her request to leave work to visit a hospital. *See id.* at 494, 340 S.E.2d at 123 (characterizing such alleged conduct as "unjustified under the circumstances" but not "extreme and outrageous as to give rise to a claim for intentional infliction of emotional distress"). Third, while it is true that a defendant's knowledge of a plaintiff's particular susceptibility to distress will bear upon a determination of whether conduct is "extreme and outrageous," *see* Restatement (Second) of Torts § 46 cmt. f (1965), that fact is not dispositive, *see id.*

Like other cases in which the alleged conduct fell short of establishing the tort, this Court similarly finds that Defendants' alleged actions, when taken as a whole, do not rise to the level of conduct required to establish a claim of intentional infliction of emotional distress. *See, e.g., Pardasani v. Rack Room Shoes Inc.,* 912 F.Supp. 187 (M.D.N.C.1996) (conduct not "extreme and outrageous" when plaintiff alleged that he was given poor performance evaluations, denied promotions available to others, excluded from training, and finally terminated from his employment); *Patel v. Scotland Mem'l Hosp.,* 1995–1 Trade Cas. ¶ 70,971, 1995 WL 319213 (M.D.N.C.1995) (allegations that defendants spread falsehoods about plaintiff's professional performance, even if true, not "extreme and outrageous" conduct); *Gray v. Laws,* 915 F.Supp. 747 (E.D.N.C.1994) (defendants' alleged personal bias and failure to follow proper state dismissal procedures not "extreme and outrageous" conduct); *Lorbacher v. Housing Auth. of Raleigh,* 127

---

· **16.** As noted previously, Buser alleges that at or prior to the time of her discharge from the Company, Defendants knew or should have known that (1) Buser's husband suffered from a spinal cord disease, was disabled, was confined to a wheelchair, and was incapable of working, (2) her Southern income was important to her, (3) the loss of her Southern income would aggravate her muscle disorder and cause her stress, (4) the loss of her Southern income would cause her to suffer severe emotional distress, and (5) Buser's only other family income was her husband's Social Security receipts. (Compl.¶¶ 13, 23.)

N.C.App. 663, 493 S.E.2d 74 (1997) (alleged discharge for the purposes of deflecting responsibility for certain deaths and for retaliation of First Amendment rights not "extreme and outrageous" conduct). Accordingly, to the extent that Buser's Complaint does not identify conduct which can be considered extreme and outrageous, she has failed to state a claim *for intentional infliction of emotional distress* and, therefore, this cause of action is hereby dismissed.

This Court does not agree, however, that the same grounds, to wit, absence of extreme and outrageous conduct, also warrant dismissal of Buser's *negligent* infliction of emotional distress cause of action. In support of their argument, Defendants cite *Lorbacher v. Housing Authority of City of Raleigh*, 127 N.C.App. 663, 493 S.E.2d 74 (1997), in which a panel of the Court of Appeals of North Carolina held that the alleged conduct must be "extreme and outrageous" even for the tort of negligent infliction of emotional distress. *Id.* at 677, 493 S.E.2d at 82.[17] This holding notwithstanding, the Supreme Court of North Carolina more recently restated that, in order to properly state a claim for negligent infliction of emotional distress, " 'an allegation of ordinary negligence will suffice.' " *McAllister v. Ha*, 347 N.C. 638, 645, 496 S.E.2d 577, 583 (1998) (quoting *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)). In light of this pronouncement by the Supreme Court .of North Carolina,[18] the Court declines to dismiss Buser's claim for negligent infliction of emotional distress on the ground that she has failed to allege facts which could be construed as "extreme and outrageous" conduct.

■ Since this Court has previously concluded that Buser has failed to state a claim for intentional infliction of emotional distress, the Court will only address Defendants' arguments regarding foreseeability and severe emotional distress as they may pertain to Buser's *negligent* infliction of emotional distress cause of action. Defendants argue that her negligent infliction of emotional distress cause of action should be dismissed because Buser has failed to properly allege that her severe emotional distress was foreseeable, (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 12–13), and because she has failed to properly allege that she actually suffered from such severe emotional distress, (*id.* at 11–12). Based upon the following reasons, this Court finds that Buser has set forth sufficient allegations of foreseeability and severe emotional distress to avoid dismissal of her negligent infliction of emotional distress claim.

b) Foreseeability

The Supreme Court of North Carolina has noted that

to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently

---

**17.** The court stated as follows:

The trial court also properly dismissed plaintiff's negligent infliction of emotional distress claim. *We are not aware of any case specifically holding that the level of conduct required for an intentional infliction of emotional distress claim is the same as that required for a negligence action. We find no principled distinction however for employing a higher or lower threshold for one over the other.* Therefore, our conclusion that defendant's conduct was not extreme and outrageous with respect to plaintiff's intentional infliction of emotional distress claim also precludes any claim for negligent infliction of emotional distress.

*Lorbacher*, 127 N.C.App. at 677, 493 S.E.2d at 82 (emphasis added).

**18.** "A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir.1999); *see also Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("The *Erie* principles apply equally in the context of pendent jurisdiction."). Accordingly, this Court "must apply the law as announced by the highest court of [North Carolina]...." *Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir.1974); *see also Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 260 (4th Cir.1998) (stating same).

engaged in conduct, (2) it was *reasonably foreseeable* that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress.

*Ruark,* 327 N.C. at 304, 395 S.E.2d at 97 (emphasis added). While Defendants concede that it would be reasonably foreseeable that the discharge would cause "some degree of worry, anxiety, disappointment, and even anger," (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 12–13, they contend that it would not be reasonably foreseeable that the termination would cause Buser to suffer from "some type of 'disabling emotional or mental disorder,'" *id.* at 13). However, this Court finds Buser's allegations of foreseeability sufficient because she appropriately alleges, among other things, that Defendants knew or should have known that the discharge "would inflict severe emotional distress upon [her]." (Compl. ¶ 24.) [19] Accordingly, the Court declines to dismiss Buser's claim for negligent infliction of emotional distress on the ground that she has failed to allege that it was reasonably foreseeable that Defendants' alleged conduct would cause her severe emotional distress.

c) Severe Emotional Distress

As noted above, in order to properly state a claim for negligent infliction of emotional distress, a plaintiff must, among other things, "allege that ... the [alleged negligent] conduct did in fact cause the plaintiff severe emotional distress." *Ruark,* 327 N.C. at 304, 395 S.E.2d at 97.[20] With their motion, Defendants contend that Buser "has simply used the words 'severe emotional distress' in her Complaint, and has alleged no facts to support

**19.** Moreover, "[q]uestions of foreseeability ... must be determined under all of the facts presented, and should be resolved on a case-by-case basis by the trial court and, where appropriate, by a jury." *Ruark,* 327 N.C. at 305, 395 S.E.2d at 98.

**20.** The Supreme Court of North Carolina has also noted that "[i]n this context, the term

such a legal conclusion." (Br. in Supp. of Defs.' Mot. to Strike and Dismiss at 12.) Although not cited by Buser, this Court turns to *McAllister v. Ha,* 347 N.C. 638, 496 S.E.2d 577 (1998), for guidance.

In *McAllister,* the Supreme Court of North Carolina held that the plaintiffs' claim for negligent infliction of emotional distress should not have been dismissed. *Id.* at 646, 496 S.E.2d at 583. The plaintiffs had alleged that the defendant physician had negligently failed to inform them of the possibility that their future child could suffer from sickle-cell disease. The plaintiffs gave birth to a child carrying the disease. In support of their negligent infliction of emotional distress cause of action, one of the plaintiffs alleged that she had been unable to sleep due to concerns about the child's health. The plaintiffs' complaint also alleged "that [the] defendant's negligence caused them 'extreme mental and emotional distress, and financial loss.'" *Id.* The court found this and other allegations sufficient to state the claim:

> Plaintiffs here alleged that plaintiff-wife became pregnant and gave birth to a child with sickle-cell disease as a result of defendant's negligence. *Plaintiffs alleged that defendant's negligence caused them "extreme mental and emotional distress,"* specifically referring to plaintiff-wife's fears regarding her son's health and her resultant sleeplessness. Like the allegations in [*Ruark*], plaintiffs' allegations here, while sparse, are sufficient to state a claim for negligent infliction of emotional distress. The allegations "are sufficient to give ... defendant notice of the nature and basis of plaintiffs' claim so as to enable him to answer and prepare for trial."

'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Ruark,* 327 N.C. at 304, 395 S.E.2d at 97.

**576**

*Id.* at 646, 496 S.E.2d at 583 (quoting *Forbis v. Honeycutt,* 301 N.C. 699, 701, 273 S.E.2d 240, 241) (omission in original) (emphasis added).

Here, Buser alleges, among other things, that Defendants' actions "inflicted severe emotional distress upon [her]." (Compl.¶ 33.) Like the allegations in *McAllister,* while it may be true that Buser's allegations may be limited, this Court nonetheless finds them sufficient for the purposes of stating a claim of negligent infliction of emotional distress. As such, the Court declines to dismiss Buser's claim for negligent infliction of emotional distress on the ground that she has failed to alleged that she suffered from severe emotional distress.

## VI. CONCLUSION

For the foregoing reasons, this Court concludes that Southern's and Nussbaum's Motion to Strike and Dismiss is granted in part to the extent that Buser's claims for discharge in violation of public policy and intentional infliction of emotional distress are hereby dismissed with prejudice.

This Court further concludes that Southern's and Nussbaum's Motion to Strike and Dismiss is denied in part. Defendants' motion to strike paragraphs 21, 22, and 27 of Buser's Complaint is denied. Defendants' motion to dismiss is denied to the extent that Buser has properly stated claims for violation of the FMLA and for negligent infliction of emotional distress.

An Order and Judgment in accordance with this Memorandum Opinion shall be filed contemporaneously herewith.